CAROLINE W. BURLEN *vs.* OLIVER N. SHANNON.

A verdict and judgment are conclusive by way of estoppel only as to facts without the ex istence and proof or admission of which they could not have been rendered.

At the trial, with a jury, of a libel for divorce, their special findings on questions of fact are not conclusive of facts not essential to, although consistent with, their general verdict and the decree entered thereon.

At the trial, with a jury, of a libel, filed in Massachusetts, for a divorce for the cruelty and desertion of the libellee, he denied the charges, and set up his divorce from the libellant by a court of competent jurisdiction in Indiana; and she sought to impeach this divorce, on the grounds that he went to Indiana to procure it, and that he was not a citizen of In diana when he there filed his libel. Special issues were submitted on these questions, and on the questions of cruelty and desertion, and findings made on each for the libellee; a general verdict was returned in his favor; and exceptions taken by the libellant were not sustained, the full court being equally divided. In an action here against the libellee for the board of the libellant subsequent to the Indiana divorce, *Held,* that the validity of that divorce was not established by the proceedings recited; and that the plaintiff might impeach it.

CONTRACT on an account, running from 1860 to 1866, for $3100, for board and lodging of Harriet M. Shannon as the wife of the defendant. Defence, that the defendant, in Indiana, in 1856, was lawfully divorced from Mrs. Shannon, to whom he was married in 1835. At the trial in the superior court, the defendant conceded that the plaintiff was entitled to a verdict if this defence should not prevail; *Morton*, J., ruled that the plaintiff was estopped from impeaching the divorce, and directed a verdict for the defendant; and the plaintiff alleged exceptions. The case is stated in the opinion.

*J. S. Abbott,* for the plaintiff.

*E. D. Sohier & G. A. Somerby,* for the defendant.

FOSTER, J.[*] In this action the plaintiff seeks to charge the defendant for the board of his wife from February 1860 to

---

[*] HOAR, J., did not sit in this case.

February 1866. The defence relied upon is, that in the year 1856 the defendant was legally divorced from his wife by a court of competent jurisdiction in the state of Indiana. The record of that divorce was introduced; and also the record of a libel by the wife against the husband, filed in this court in 1861 and dismissed at April term 1865 for Suffolk, in which she claimed a divorce *a mensâ et thoro* for cruelty and desertion, and he denied the charges and also set up in defence the previous divorce *a vinculo* obtained in Indiana.

The learned judge at the trial ruled that the record dismissing the libel for divorce *a mensâ* was conclusive in favor of the validity of the Indiana divorce. He rejected the evidence proffered by the present plaintiff to show that the Indiana court had no jurisdiction over the wife, and held that the effect of the two proceedings together was, to establish conclusively the matrimonial *status* of the parties, and to relieve the defendant forever from all marital obligations subsequent to the Indiana decree.

The propositions to be maintained by the defendant, who supports this ruling, are: first, that even if the Indiana divorce were originally invalid the wife is now estopped to deny its validity, by reason of the proceedings in the libel *a mensâ*; second, that this supposed estoppel conclusively establishes the *status* of the parties as against all the world, and forever determines that the Indiana decree in 1856 did dissolve the marriage; third, that this estoppel relates back to the date of the Indiana divorce in such a manner as to bar and cut off the plaintiff's entire claim, most of which accrued before the date of the decree by which the estoppel is alleged to have been created.

In the libel *a mensâ*, the Indiana divorce was charged by the wife to be invalid because neither of the parties " has ever been domiciled in that state;" and the question of its validity was also distinctly presented by the answer of the husband, in which he pleaded the previous decree dissolving the marriage as a bar to the then pending application for a divorce from bed and board. Issues to the jury were framed, and at a trial in 1862 there was a general verdict for the libellee, together with specific findings in his favor upon all the issues which were propounded

in the form of questions. By Gen. Sts. *c.* 107, § 15, "either party to a libel for divorce may demand a jury trial, whereupon the questions of fact arising upon the libel are to be so tried under the direction of the court, and a decree may be entered in conformity with the verdict." Under this form of proceeding it seems obvious that the rendition of a general verdict can add nothing to the weight of the specific findings. At the trial of the libel *a mensâ*, these were five in number. The first three negatived all the charges of misconduct contained in the libel; the fourth found that the libellee did not go to Indiana for the purpose of procuring a divorce; and the fifth found that he was a citizen of that state when he filed the libel there in which his divorce *a vinculo* was obtained. Upon the verdict on the first three issues it is manifest that the libel *a mensâ* must have been dismissed, whatever might have been the findings of the jury or the judgment of the court touching the validity of the Indiana decree. The libellant failed to prove any *delictum* against her husband. Inasmuch as he was found not guilty of either desertion or cruelty, it was impossible that any decree should be pronounced against him. How then can it be maintained that the decree in his favor by which this libel was dismissed conclusively establishes the validity of the Indiana divorce, when the same result must have been reached if no such record had existed ?

The ground taken by the defendant is, that a general verdict and judgment are conclusive in favor of the prevailing party as to all issues actually involved in the trial, upon which any evidence was offered and which were submitted to the jury, although it may not appear that they were the very points on which the decision turned, and it may be doubtful in favor of which party any one of them was found, or even whether as to all of them the jury came to any conclusion. Such, however, is not in our opinion the true doctrine of the law. A verdict and judgment are conclusive by way of estoppel only as to those facts which were necessarily involved in them, without the existence and proof or admission of which such a verdict and judgment could not have been rendered. An estoppel is an admission or determination

under circumstances of such solemnity that the law will not allow the fact so admitted or established to be afterwards drawn in question between the same parties or their privies. An estoppel by verdict and judgment is founded on the principle of the maxim, *Interest reipublicæ ut sit finis litium.* And the true limits of the doctrine are accurately stated in another maxim, *Nemo debet bis vexari* SI CONSTET CURIÆ *quod sit pro unâ et eâdem causâ.* When a fact has been once determined in the course of a judicial proceeding, and a final judgment has been rendered in accordance therewith, it cannot be again litigated between the same parties without virtually impeaching the correctness of the former decision, which from motives of public policy the law does not permit to be done. The estoppel is not confined to the judgment, but extends to all facts involved in it as necessary steps or the groundwork upon which it must have been founded. It is allowable to reason back from a judgment to the basis on which it stands, " upon the obvious principle that, where a conclusion is indisputable and could have been drawn only from certain premises, the premises are equally indisputable with the conclusion." But such an inference must be inevitable, or it cannot be drawn. These we understand to be the limitations of the rule, according to all the well considered authorities, ancient and modern. 2 Smith Lead. Cas. 573 *et seq* *Outram* v. *Morewood,* 3 East, 346. *The Queen* v. *Hartington,* 4 El. & Bl. 780. *Washington Steam Packet Co.* v. *Sickles,* 24 How. 333. *Packet Co.* v. *Sickles,* 5 Wallace, 580. *Dickinson* v. *Hayes,* 31 Conn. 417. *Church* v. *Chapin,* 35 Verm. 223.

Some imperfectly guarded expressions in *Jennison* v. *West Springfield,* 13 Gray, 544, are susceptible of a different construction. By reference to the bill of exceptions, we find that the defendants offered a former record between the same parties together with evidence that the only matter then in controversy was the settlement of a pauper; that this was by both parties conceded to be the only question submitted to the jury ; and that all the evidence consisted of certain agreed facts and depositions. But the witness by whom this was proved added, that " he did not know of any formal abandonment of the other

grounds of defence." The presiding judge ruled that the former judgment was neither conclusive nor admissible, unless there had been at the trial a formal abandonment of every other issue except the single one of the settlement of the pauper; and that the facts did not show an abandonment sufficiently formal; and therefore he rejected the record and the parol evidence offered therewith. This rule was held to be too stringent, and exceptions to it were sustained. This is the extent to which that case can be regarded as authority.

In *Sawyer* v. *Woodbury*, 7 Gray, 499, the opinion, by Shaw, C. J., expounds the law with fulness and accuracy; but the exceptions taken at a second trial were overruled without any statement of reasons, and we find it impossible to reconcile this final result either with the opinion or with sound legal principles. This circumstance has been noticed in *Perkins* v. *Parker*, 10 Allen, 22, in which it is said that the final disposition of *Sawyer* v. *Woodbury* must be assumed to have been intended to be in harmony with the opinion which had been previously announced, and which had recognized *Dutton* v. *Woodman*, 9 Cush. 255, and *McDowell* v. *Langdon*, 3 Gray, 513, as authorities. In the last case, it was directly adjudged that a verdict and judgment are not conclusive, unless it appears by the record, or by parol evidence in addition thereto, that the prevailing party in the former suit prevailed upon the very issue in support of which he offers the record in evidence. There the two cases were between the same parties, and of the same nature. In the first, the defendant pleaded not guilty to a charge of obstructing the flow of water to the plaintiff's mill, and also a right to use the water in the manner complained of. When he relied upon the record of the first judgment in his favor, as a bar to the second action for similar subsequent torts, it was left doubtful on which of the two grounds he prevailed at the former trial; and for this cause the court held that the plea could not be sustained.

In *Burlen* v. *Shannon*, 3 Gray, 387, and *Same* v. *Same*, 14 Gray, 433, (two former actions between these parties for a like cause with the present,) the true principle is distinctly recognized. Shaw, C. J., says: " It is only when a fact is specially

put in issue, traversed and tried, that a verdict and judgment following it are evidence against a party." 3 Gray, 392. And in the later of the two cases, 14 Gray, 439, it was directly and explicitly decided that the former one, in which the husband was held liable to the present plaintiff for the board of his wife during a certain period of time, did not conclusively establish that his cruelty was the cause of her absence from his house during that time; since the action had been tried upon two issues; one that the husband was liable for the support furnished to his wife, because his cruelty justified her separation from him, and the other that he was liable because the separation was by his consent. The chief justice said: " The parol evidence was rightly admitted to ascertain what questions were in fact tried and submitted to the jury. This evidence showed that two such questions were submitted; that if either of two things were true they would return a verdict for the plaintiff. A verdict on that direction for the plaintiff proved nothing more than that the jury found one of the propositions true, but without finding which." 14 Gray, 439. The whole current of our own decisions fully supports the limitations of the doctrine of estoppel which we now sanction and adopt.

But the defendant further insists that in the libel *a mensâ* there were distinct and special findings by the jury, in answer to the fourth and fifth questions submitted to them, of the facts essential to the validity of the Indiana divorce; and that the decree dismissing the libel was a direct judgment upon these issues. There would be much force in this position, if there had been a common law verdict and judgment rendered upon such special findings. Although we are aware of no adjudged case which prescribes the effect to be attributed by way of estoppel to a judgment on a special verdict which ascertains various facts a part only of which would have been sufficient to determine the result of the action, yet in equity causes, probate appeals, and libels for divorce, issues to a jury differ widely from jury trials according to the course of the common law. At the common law, if a verdict is not set aside, judgment upon it is the immediate and necessary result, unless a motion in arrest

of judgment is successfully interposed. In the other class of cases, the office of the verdict is to inform the conscience of the court. The final decree is the distinct and independent act of the chancellor or judge. The verdict is treated as weighty, but not always as conclusive, evidence. In England, and in many American courts, the verdict is sometimes wholly disregarded, and a d?cree is entered in opposition thereto, where the court is clearly satisfied that the verdict is contrary to the truth as established by the whole body of evidence in the cause. *Ansdell* v. *Ansdell,* 4 Myl. & Cr. 449. *Day* v. *Hartshorn,* U. S. District Court for R. I. 1855, before Pitman, J., quoting the opinions of Nelson, Curtis, Woodbury and Sprague, JJ. *Pike* v. *Potter,* U. S. Circuit Court, R. I. District 1859, before Clifford and Pitman, JJ. 2 Dan. Ch. Pr. (3d Am. ed.) 1115 & notes. " A verdict upon an issue ordered by a court of equity is in no just sense final upon the facts it finds, or binding upon the judgment of the court. The court may at its pleasure set it aside and grant a new trial, or, disregarding it, may proceed to hear the cause, and decide in contradiction to the verdict; or it may adopt the verdict *sub modo,* and give it a limited effect only." Per Story, J., in *Allen* v. *Blunt,* 3 Story, 746. This practice has never been sanctioned by the usage of our own courts· *Franklin* v. *Green,* 2 Allen, 522; but it illustrates the fact that the conclusiveness of verdicts in equity and the ecclesiastical courts is not regarded in the same light as in ordinary common law proceedings. There is an implied recognition of the difference, in the statute, as to trials by jury in divorce cases, the language of which is, that " a decree may be entered in conformity with the verdict."

We must examine the former decree in the light of these principles. And doing so, it is clear that when the court took the several findings of the jury into consideration, and dismissed the libel *a mensâ,* nothing more was determined than that, for one of two reasons, the libellant had failed to maintain her case. It is left wholly uncertain and unascertainable whether the libel was dismissed on the ground that no *delictum* or cause of divorce alleged against the libellee had been proved; or because

there had been a previous dissolution of the marriage. This libel was twice before the court *in banc;* in January 1861, (*Shannon* v. *Shannon,* 4 Allen, 134,) when certain exceptions were sustained; and again, after a second trial, in November 1862. In January 1863 a rescript was entered: " The court being equally divided in opinion, the exceptions are not sustained." Upon examining the briefs at the last argument, we find that the counsel for the libellee insisted that, as " the jury had found for the defendant specially upon the main points in the case, the question in regard to the Indiana divorce was immaterial." This position seems to us to have been well taken. We cannot judicially know that the exceptions were not overruled as immaterial, and that the libel *a mensâ* was not dismissed because the libellee had been found not guilty. Under these circumstances, it is impossible to regard these proceedings as having established by estoppel the validity of the Indiana divorce. The ruling of the learned judge at the trial of the present action cannot therefore be maintained.

Considering the importance, delicacy and difficulty of the questions involved in this cause, we have been disposed to anticipate nothing, and have carefully confined our attention to the points immediately raised by this bill of exceptions. We have studiously refrained from considering whether the Indiana court had sufficient jurisdiction to warrant a decree of divorce which can be recognized as valid beyond the limits of that state, either on the ground that the domicil of the wife followed that of her husband and was transferred to Indiana when he removed there, although she remained in Massachusetts; or on the ground that the tribunals of a state in which the libellant alone is domiciled can dissolve a marriage. Nor have we examined the novel and curious questions, whether a divorce originally invalid can be made valid by subsequent proceedings between the parties creating an estoppel conclusive upon their matrimonial *status;* nor, if this could be done, whether such an estoppel would operate by relation, and destroy the claim of the present plaintiff for necessaries furnished to the wife before the decree creating the estoppel was rendered. *Exceptions sustained.*