# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

# DISTRICT OF COLUMBIA.

---

## CUMMINGS *v.* BAKER.

---

PRACTICE; RES JUDICATA; EFFECT OF DISMISSAL OF BILL FOR
LACHES.

1. The opinion of the Supreme Court of the United States in a cause
appealed from this court, may be resorted to in order to ascertain what questions in the cause were actually adjudicated by
that court.

2. The estoppel of former adjudication applies to what was actually
decided and also to what ought to have been decided, but
does not include every matter of fact and law that might
have been determined under some contingency that did not
arise.

3. The opinion of the Supreme Court of the United States in a suit
in equity whereby one partner sought to have vacated for
fraud a sale of his partnership interest to his co-partner and
a partnership accounting, examined, and the decree of that
court which reversed the decree of this court and directed a
dismissal of the bill of complaint, *held* not to be an adjudication upon the merits, but a refusal only to entertain the cause
because of the *laches* of the complainant, which did not bar
an action at law between the same parties involving the same
cause of action ; Chief Justice ALVEY dissenting.

No. 898. Submitted October 19, 1899. Decided February 6, 1900.

HEARING on an appeal from a judgment of the Supreme
Court of the District of Columbia entered upon an agreed
statement of facts in an action of *assumpsit*.   *Reversed.*

The COURT in its opinion stated the case as follows:

The parties to this appeal had been partners as claim

16 Ct. App.—2

agents and attorneys, in the city of Washington, for some years before September 1, 1889, at which time their partnership was dissolved.

Litigation between them, concerning receipts of the former partnership business, began December 19, 1889, with the declaration in *assumpsit* filed in this case in the Supreme Court of the District of Columbia by Henry M. Baker against Horace S. Cummings, wherein he claimed the sum of $2,712.81, with interest from July 31, 1889.

An accompanying bill of particulars sets out many items of receipts and expenses, with credits of like character, and shows the balance aforesaid.

On February 1, 1890, and before time for pleading to the declaration had expired, Cummings filed a bill in equity in said court against Baker, the direct object of which was to set aside for fraud a transfer by Cummings to Baker of all his interest in certain fees of the business, made about three years before the dissolution of the partnership.

The bill alleges the existence of a partnership between the parties from about July 1, 1874, until its dissolution by mutual consent September 1, 1889.

It is then alleged that a large part of the business of the partnership had consisted of what are called "Inspector's Cases;" that each partner had the management of special classes of the business, and these "Inspector's Cases" fell under the control of Baker, who had complete knowledge of the number, amount and condition of the same, whilst Cummings was not informed thereof; that the interest of the partners in said cases was one-fourth of the collections, which was to be divided between them; that about September 6, 1886, Baker offered Cummings $15,000 for his interest in the fees of said "Inspector's Cases;" that Baker, after having furnished Cummings a bundle of papers concerning said claims, from which he was unable to learn their amount and condition, represented to him "that the amount of fees earned and payment of which was already provided for by

act of Congress was but the sum of $20,000; and the amount of all other claims of said "Inspector's Cases," not then appropriated for, would be about $80,000, in which last-mentioned cases the expected fees to accrue to the firm would be about $20,000.

That relying solely upon the representations of Baker, Cummings agreed to take $10,000 for his interest in the $20,000 of fees in claims already appropriated for, and $5,000 for those in expectancy—in all, $15,000.

That thereupon Baker paid Cummings $15,000, and received from him a transfer, which, having been made an exhibit to Baker's answer, reads thus:

"WASHINGTON, D. C., Sept. 6th, 1886.

"Received of Henry M. Baker fifteen thousand (15,000) dollars full for all interest in and right to fees in the so-called inspector cases. This includes all cases in which fees have not been divided and settled, except one draft to the order of John C. Long, and one to the order of James Mitchell, both dated in 1875, whether paid or unpaid, filed, or outstanding.

(Signed)       H. S. CUMMINGS."

"That at the time of his inquiry of the said defendant as aforesaid, and when the assignment was made as aforesaid, instead of there being, as represented by defendant, but twenty thousand dollars ($20,000.00) of fees in the cases in which there had been appropriations made by Congress as aforesaid, as complainant afterward discovered, more than thirty-two thousand dollars ($32,000.00) of such fees had been earned, and of which the greater portion had already been collected by the defendant, and in which the share of this complainant, as an equal partner with the defendant, was one-half, or more than sixteen thousand dollars ($16,000.00), and the complainant therefore avers that the representation of the said defendant in regard thereto was false, untrue and misleading; and tended to the manifest injury, wrong

and prejudice of the complainant in the premises. And the complainant further shows that instead of there being only eighty thousand dollars of claims in cases where no congressional appropriation had been made, there were more than two hundred and seventy-five thousand dollars of such claims, and although complainant does not aver that the said defendant knew the exact and full extent of the claims unappropriated for at the time he made the representations in regard thereto, yet he believes, and therefore avers the fact to be, that the defendant well knew that he was largely understating the amount thereof when he stated the same to be eighty thousand dollars, and well knew that the complainant relied upon the truth of said statement as a basis of the agreement which resulted in said assignment."

That Cummings was, by the wrongful acts of Baker as aforesaid, induced to execute the assignment aforesaid which Baker now holds, against equity and good conscience, and the same ought to be regarded as null and void; and that Cummings is of right entitled to an equal division, not only of said $32,000, but also of such fees as the said defendant has received out of the claims subsequently collected, upon an accounting to be had thereof.

The bill concludes with the following allegation and prayers:

"10. And the complainant further shows that on the 19th day of December, 1889, the said defendant commenced an action of assumpsit upon the common counts against the complainant on the law side of this court, demanding the sum of $2,712.81 and interest from the 31st day of July, 1889, and appended to his declaration a bill of particulars of his claim, which said declaration and bill of particulars the complainant makes a part hereof, and prays leave to read on the hearing of this cause as often as occasion may require. And complainant avers that all of the items in the said bill of particulars originate in and grow out of the partnership dealings of the parties, and not otherwise, and

that the said items do not constitute a full adjustment of the rights of this complainant and the said defendant, and that only by a full, proper and complete accounting and discovery under the order and direction of a court of equity could a proper adjustment be had of the rights and equities of the complainant and defendant growing out of their partnership dealings. That the said suit at law is not yet at issue, but that the time for pleading thereto has nearly approached, and that the complainant can not under the rules of pleading at law incorporate in his plea the equitable defenses herein set forth, and which in a court of equity would prevail against the defendant's demand, and especially is the equitable right of the complainant to have discovery in the premises and to have the said assignment canceled and held for naught a matter not cognizable by a court of law, and if the defendant were, therefore, permitted to prosecute his said suit at law against complainant this complainant would be deprived of his defenses to said suit now pending as aforesaid, and that the complainant is therefore entitled to have the defendant enjoined from prosecuting his said suit at law and to have this court order and direct a full and complete accounting between complainant and defendant in respect of their partnership dealings as aforesaid.

"Wherefore complainant prays as follows:

"2. That the said assignment be declared null and void and be held for naught, and that the defendant be directed to surrender the same for cancelation.

"3. That the defendant may be enjoined from the further prosecution of said suit at law begun in the Supreme Court of the District of Columbia on the 19th day of December, 1889, and numbered on the docket of said court as law No. 30,197, pending this cause, and that upon final hearing the injunction may be made perpetual.

"4. That a full and complete account may be had under the order and direction of this court between the complainant and defendant in respect of the said partnership dealings,

and the defendant be decreed to pay to complainant the amount which may be found to be due him, and for a full and complete discovery as to all matters herein set forth.

"5. That the complainant may have such other and further relief as to the court may seem just."

Defendant Baker filed a lengthy sworn answer to this bill, wherein he stated the character of the partnership business and alleged full knowledge by Cummings of all matters connected with the "Inspector's Cases," and a fair purchase and sale of his interest therein. He explicitly denied the allegations of misrepresentations, fraud and unfairness in the matter of the said assignment.

The answer concludes with the special defense of *laches*, as follows:

"This defendant, further answering, says this is an attempt on behalf of the complainant, after the lapse of more than three years, with the full knowledge of all the facts, to attack said sale as void; the claim here made by complainant is old and stale, and such as is not favored in equity; and especially ought such demands as this be frowned down by equity after the lapse of this period of time, and during the whole period and over of three years the complainant has not said nor made any effort against the *bona fides* of said transaction; and the complainant here pleads the Statute of Limitations in his behalf; that said claim did not accrue, nor was any demand made to show error or otherwise by complainant to defendant within the period of three years."

An order was issued restraining the further prosecution of this action at law, which was dissolved about February 1, 1892.

On February 10, 1892, Cummings filed pleas of non-assumpsit, limitation, etc., and two others in set-off, claiming a balance due by Baker of $35,873.35.

Accompanying these pleas was a bill of particulars containing an itemized statement of moneys received by Baker

and unaccounted for, some of which items bear date as received within three years next preceding the filing of the counterclaim.

Issue was joined on the pleas, and by consent further proceedings were stayed until the case in equity could be determined.

The bill aforesaid was sustained in the equity court and an account was ordered to be made by the auditor. This having been made, a final decree was rendered on behalf of Cummings against Baker for the sum of $32,772.14, on February 17, 1896.

This decree was affirmed on appeal to the Court of Appeals. See 8 App. D. C. 515; 4 App. D. C. 230. On appeal to the Supreme Court of the United States, the decree of the Court of Appeals was reversed, and the cause was remanded to that court, " with directions to set aside the decree of the Supreme Court of the District of Columbia, and to remand the cause to that court with instructions to dismiss the bill." See *Baker* v. *Cummings*, 169 U. S. 189.

The mandate, in accordance with the custom, concludes with commanding that further proceedings be had " in conformity with the opinion and decree of this court," etc. The decree and mandate of the Court of Appeals follow the same form.

This decree was pleaded by Baker as an adjudication of all matters embraced in Cummings' plea of set-off.

The case went to final trial and judgment was rendered in favor of Baker upon the following stipulation:

"It is hereby stipulated and agreed by and between the parties to this cause, by their respective attorneys, that this cause may be tried by the court without a jury, the parties hereby expressly waiving the same, upon the following agreed statement of facts, subject to the limitations herein contained:

" That on the 31st day of July, A. D. 1889, and for a long

time prior thereto, the plaintiff and the defendant were co-partners engaged as attorneys in the prosecution of claims against the United States, the net fees derived therefrom being under the contract of partnership equally to be divided between them, the said partners; that on the 19th day of December, A. D. 1889, the plaintiff instituted this action to recover the sum of $2,712.81, with interest from the 31st day of July, A. D. 1889; that the said sum is the identical sum referred to on pages 227 and 248 of the record on appeal to the Supreme Court of the United States in the equity cause hereinafter referred to; that after the institution of this suit the defendant herein instituted a certain equity proceeding against the plaintiff herein in the Supreme Court of the District of Columbia, the same being known and numbered on the dockets of said court as equity cause No. 12,263; the record, decrees, and opinions of the respective courts therein, both in this and the appellate courts, are hereby referred to and made part hereof; that the several items of account set forth in the pleas of set-off herein are respectively the identical items set up, referred to, and claimed in said equity cause.

" If the court on inspection of said record and proceedings in said equity cause and of the record and proceedings of this cause shall be of opinion that the defendant herein may not set up in bar of the plaintiff's action any of said items of set-off and counterclaim as pleaded in this action, but is concluded by the proceedings and decree in said equity cause, then this court may enter judgment for the plaintiff in this action for the sum of $2,712.81, with interest thereon from the 31st day of July, A. D. 1889, as claimed in his declaration herein, but if the court shall be of opinion that any of said items of set-off and counterclaim may be set up in bar of the plaintiff's action herein, then this cause shall be remanded to the docket for trial by jury. Both parties hereto reserve the right of appeal or by writ of error from the judgment of this court or of any court of review passing

hereon and also any other remedy which they may by law be entitled to.

> " HENRY M. BAKER.
> " HORACE S. CUMMINGS.

" CLARENCE A. BRANDENBURG,
> "*Att'y for Plaintiff.*

" FRANKLIN H. MACKEY,
> " *Att'y for Defendant.*"

From that judgment Cummings has appealed.

*Mr. Franklin H. Mackey* for the appellant:

1. To ascertain what the court decided in the equity suit, we have a right (where the decree is simply one of dismissal of the bill) to examine, not only the decree, but the pleadings, the evidence, and the opinion of the court. *Strong* v. *Grant,* 2 Mackey, 218; *Cromwell* v. *County of Sac,* 94 U. S. 353.

2. To be a bar to future proceedings it must appear that the former judgment necessarily involved the determination of the same fact to prove or disprove which it is offered in evidence. It is not enough that the question was in issue in the former suit; it must also appear to be precisely determined. Where in the answer various matters of defense are set forth, some of which relate to the maintenance of the suit and others to the merits, and there is a general decree of bill dismissed, it is impossible to hold the decree a bar to future proceedings. *Foster* v. *The Richard Busteed,* 100 Mass. 409; *Attorney General* v. *Railroad,* 112 Ill. 520; *Sheldon* v. *Edwards,* 35 N. Y. 286; *Rockwell* v. *Langley,* 19 Penna. St. 502; *Hickerson* v. *Mexico,* 58 Mo. 61; *Aurora* v. *West,* 7 Wall. 82; *Sewall* v. *Robbins,* 139 Mass. 164.

The question whether Baker has within three years of the filing of this cross-action or plea of set-off received money which *ex æquo et bono* is Cummings' money is a question never determined by the Supreme Court of the United States. That court only decided that it would not enjoin

an action at law when it appeared that whatever equitable rights the complainant may have had had been lost by *laches.*

2. But there is still another ground upon which we are entitled to combat the plaintiff's claim and recover under our plea of set-off what we allege he owes us. The rejoinder to the third replication of the plaintiff to the set-off alleges that the contract of assignment was executed without any consideration whatever. If this plea be true, Cummings is entitled to recover his share of all "inspector fees" received by Baker since the alleged assignment, irrespective of the fact whether they were received within or without three years of the time of filing the plea of set-off, for if there was no consideration for the assignment, then it was absolutely void and the partnership business went on without regard to it. Baker in that case received these fees as defendant's partner, subject to his right in them, for one partner can not plead the Statute of Limitations against his co-partner for money received on account of the partnership business as long as the partnership exists.

*Mr. Clarence A. Brandenburg* for the appellee:

1. In order to render a matter *res judicata*, there must be a concurrence of four conditions, viz.: (1) Identity in the thing sued for; (2) Identity of the cause of action; (3) Identity of persons and parties to the action; and (4) Identity of the quality in the persons for or against whom the claim is made. *Lyon* v. *Mfg. Co.*, 125 U. S. 698.

In *Durant* v. *Essex Co.*, 7 Wall. 107, the Supreme Court added the requirement that the decree must be upon the merits. Whether the plea of *res judicata* in this case concludes the defendant as to his plea of set-off will therefore be determined by ascertaining if the elements essential to the maintenance of such plea, as determined by these decisions, are found to be present.

The identity of the cause of action and of the thing sued

for and the identity of the parties to the action, are all admitted by the stipulation, as also the "identity of the quality in the persons for or against whom the claim is made." If, therefore, the decree was not made because of some defect in the pleadings, or because the complainant has an adequate remedy at law, or upon some other ground which does not go to the merits, it is a final determination. It is clear that the decree in the equity case was not made "because of some defect in the pleadings," nor "for want of jurisdiction or because the complainant had an adequate remedy at law."

2. The decree of the Supreme Court was upon the merits. In order to determine if the decree of the Supreme Court was upon the merits, we may look to its opinion only when the record and decree leave the matter in doubt. The record and decree in this case leave no doubt whatever upon the subject. The authorities seem to remove all question upon the subject. *Campbell* v. *Rankin,* 9 Otto, 261; *Davis* v. *Brown,* 94 U. S. 423; *Russell* v. *Place,* 94 U. S. 606.

3. The Supreme Court, as a matter of fact, fully considered and discussed at length the evidence in the case relating to "fraud" and "no consideration," but in its opinion stated that it preferred to rest its decision upon the bar of limitations. Giving then the very narrowest and most unreasonable construction and effect to the decree and opinion, at the very least, it certainly decided that Cummings was barred by limitations from maintaining his suit to set aside the assignment on any ground whatever. A decision upon such a ground is a decision on the merits. *Knodeler* v. *Meloy,* 2 MacA. 239; *Clemenson* v. *Williams,* 8 Cranch, 172; *Bell* v. *Morrison,* 1 Pet. 351; *M'Cluny* v. *Silliman,* 3 Pet. 270; *United States* v. *Wilder,* 13 Wall. 254; *Leffingwell* v. *Warren,* 2 Black, 599; *Thompson* v. *Shepherd,* 122 U. S. 231; *Wood* v. *Carpenter,* 101 U. S. 139.

4. The effect of the decree is not limited to the issue decided. The decision having been upon the merits, is

conclusive as to all questions, not only the issues decided but those which might have been decided, not only those raised but those which might have been raised. *Cromwell* v. *Sac County*, 94 U. S. 351; *Davis* v. *Brown*, 94 U. S. 423; *Dowell* v. *Applegate*, 152 U. S. 327.

Assuming that the questions of "fraud" and "no consideration" were not in issue in the case, and were not decided, and restricting the opinion and decree to a decision upon the matter of limitations merely, and a decision on the question of limitations being now considered a decision on the merits, the decree concludes the appellant upon the issues of "fraud" and "no consideration" even if he did not present them, because they might have been presented in the case.

5. The decree of the Supreme Court of the United States, and that of the Supreme Court of the District made pursuant thereto, was a general decree of dismissal without words of qualification, and is conclusively presumed to be upon the merits. *Durant* v. *Essex Co.*, 7 Wall. 107; *Case* v. *Beauregard*, 11 Otto, 688; *Lyon* v. *Mfg. Co.*, 125 U. S. 698; 21 A. & E. Encyc. L., 273, note 1; *Tankersley* v. *Pettis*, 71 Ala. 179; *Foote* v. *Gibbs*, 1 Gray, 413; *Bigelow* v. *Winsor*, 1 Gray, 301; 1 Herman on Estoppel and Res Adjudicata, 471, 473–4; *New Orleans Co.* v. *New Orleans*, 14 Fed. Rep. 373.

If the decree in the equity case is conclusively presumed to be upon the merits, the equity case possessed all of the elements necessary to render *adjudicata* the several items of set-off filed in this suit, being the identical items set up, referred to and claimed in said equity cause.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The appellant's plea of set-off, if sustained, would, under the statutes regulating the practice in this District, entitle him to judgment for any balance found due after allowing the just demands of the plaintiff. R. S. D. C., Secs. 810, 811, 812.

This plea, with the replication thereto and rejoinder, present the direct issue of fraud in the procurement of the assignment made by Cummings to Baker, September 6, 1886, of his interest in the fees in the " Inspector's Cases." And the sole question involved in this appeal is the sufficiency of the appellee's defense of former adjudication of that issue, founded on the decree in the equity branch of the case.

The doctrine of *res judicata*, with the general limitations of its application, has been well settled by decisions of the Supreme Court of the United States; and there is no occasion to inquire beyond them. In the latest of these it is expounded by Mr. Justice Harlan, who delivered the opinion of the court, in the following words:

" The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, can not be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very objects for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them." *So. Pac. RR.* v. *United States*, 168 U. S. 1, 48.

2. The application of this general principle to the peculiar features of the case shown by this record presents a

question of grave difficulty, involving, as it does, also the delicate task of defining the scope of a general decree entered in pursuance of a mandate of the Supreme Court of the United States.

The litigation between Baker and Cummings began with this action at law, in which, necessarily, the relief of both parties was confined to matters within the jurisdiction and remedies of a court of common law.

Cummings filed his bill in equity to stay the proceedings at law before the expiration of the time for pleading thereto had expired.

Therein, as shown in the statement of the case, he alleged the procurement of the said assignment through fraudulent misrepresentations and concealment, and prayed its cancelation. This, being a relief that could not be had at law, presented the necessary foundation of the jurisdiction of the court of equity. In addition, he prayed for an accounting in respect of the claims, included now in the plea of set-off, and for a decree awarding him the balance found to be due thereon. This last relief could only be given by a court of equity as incidental to the matter upon which its jurisdiction was invoked and depended; upon the principle that, equity jurisdiction having once attached, might be retained for the purpose of complete relief through the final adjudication of all rights involved.

The order staying the proceedings at law was shortly after dissolved, and the plea of set-off was then filed. Subsequent prosecution of the law suit was then suspended by consent. This plea would, of course, stop the Statute of Limitations as to any items properly included in it from the date of its entry. Strange to say, the pendency of this issue at law was not brought to the attention of the courts which, in succession, passed on the case in equity. Had it been, it is probable that the pending question would have been avoided either by a decree of qualified dismissal, on the one hand, or by an express adjudication on the other.

3. Notwithstanding the dismissal was ordered and entered without words of qualification, the appellant contends that the opinion of the Supreme Court may be resorted to for the ascertainment of the grounds and the limitation of the scope of that decree.

In this we concur. The opinion is a part of the record returned to this court and transmitted in turn to the court below. The mandate in the usual terms directs that further proceedings be in accordance with the transmitted opinion. It is the one certain source of information in respect of the issues considered and determined.

In a case wherein the effect of a general decree of dismissal of a bill in a State court was under consideration, the Supreme Court of the United States, without question, looked to the opinion of the Supreme Court of the State wherein the decree had been affirmed to ascertain what had been actually adjudicated. *Phelps* v. *Harris,* 101 U. S. 370, 374, 375.

In another case, the unauthorized findings of fact filed by the trial court of a State were resorted to for the same purpose. *Last Chance Mining Co.* v. *Tyler Mining Co.,* 157 U. S. 683, 690.

In that case Mr. Justice Brewer said : "If it be true that the statutes of Idaho do not authorize findings of fact, it is none the less true that such findings are a declaration by the court of the matter it determines. Even if not conclusive against all testimony, they are certainly very persuasive evidence of what the court did in fact decide." He also quotes with approval an opinion of the Court of Appeals of Virginia in a case where that court held it proper to examine an opinion filed by the trial judge to ascertain the grounds of his judgment.

4. Before proceeding to an examination of the opinion of the Supreme Court for the ascertainment of the questions actually adjudicated by the decree, it is in order to consider a contention on behalf of the appellee. That contention is,

that the estoppel of former adjudication not only applies to what was actually decided, but also to everything that might have been decided in the equity suit, and is founded on an expression so often found in opinions discussing this vexed question. This expression—might have been decided—can not, consistently with reason, be made to include every matter of fact and law that might have been determined in a case under some contingency that did not arise.

It would better mean, in our opinion, that which ought to have been decided; that is to say, what must have been decided as expressly at issue, and that also which must either have been assumed, admitted expressly or by implication, or proved in order to warrant the judgment or decree rendered.

This idea is clearly set forth by Mr. Justice Field in *Cromwell* v. *County of Sac*, 94 U. S. 351, 352. Referring therein to the conclusiveness of a former judgment, he says:

"It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence." See, also, *Dowell* v. *Applegate*, 152 U. S. 327, 343; *W. A. & G. S. P. Co.* v. *Sickles*, 24 How. 333, 341, 344–5; *Burlen* v. *Shannon*, 99 Mass. 200, 202; *Snyder* v. *McComb*, 39 Fed. Rep. 292, 300.

5. It now remains to ascertain the questions actually determined by the Supreme Court in the equity case of

*Baker* v. *Cummings*, 169 U. S. 189. Was that decision an adjudication of the merits of the cause?

A decree in equity, in accordance with the general principle before stated, is conclusive of the rights and questions involved in the case, "unless made because of some defect in the pleadings, or for want of jurisdiction, or because the complainant has an adequate remedy at law, or upon some other ground which does not go to the merits." *Durant* v. *Essex Co.*, 7 Wall. 107, 109; *Hughes* v. *United States*, 4 Wall. 232, 237; *Phelps* v. *Harris*, 101 U. S. 370, 376; *Cramer* v. *Moore*, 36 Ohio St. 347, 349.

Now, as we have seen, the *gravamen* of the bill of Cummings was the cancelation of the assignment held by Baker. This alone conferred the jurisdiction in equity, and its finding in his favor was the necessary foundation of an inquiry into the state of the accounts between the parties, looking to a decree for the balance that might be ascertained thereon.

The answer of Baker, it is true, contained a specific denial of each and every allegation of fraud; but at the same time raised the question of Cummings' *laches* in seeking a remedy in equity.

Granting that all the other elements of jurisdiction may appear, yet courts of equity will, notwithstanding, refuse relief to which a complainant might otherwise be entitled, where he has been guilty of inexcusable *laches* in seeking relief. "This form of *quasi* estoppel does not cut off the party's title, nor his remedy at law; it simply bars his right to equitable relief, and leaves him to his legal actions alone." 2 Pom. Eq., Sec. 817. He is simply refused consideration—turned out of equity, and remitted to his chances at law.

And this objection to the consideration of the merits of the complainant's case may be raised by the court, of its own motion, when it has not been suggested by his adversary. *Mayse* v. *Gaddis*, 2 App. D. C. 20, 27, and cases cited.

Refusal, then, to entertain a bill because of the *laches* of

16 Ct. App.—3

the complainant is not an adjudication upon the merits of the suit, and dismissal, for that reason, ought not to bar an action at law involving the same cause of action any more than where it is for want of jurisdiction on other grounds, or for defect in the pleadings.

Turning now to the opinion by which the decree is to be interpreted, we think it shows with reasonable certainty that the decision was made to turn exclusively upon the complainant's *laches*.

This can be made to appear in no better way than by quoting freely from the opinion.

After a very careful and complete statement of the case and of the issues to which the evidence was directed, the learned justice who delivered the opinion, said:

"We will defer an examination of the testimony as to the existence of the fraud and misrepresentation complained of until we have passed on the charge that, if there was fraud and misrepresentation, Cummings had full knowledge thereof immediately after the sale. We adopt this order of consideration because if it be found that such was the case, the question whether the fraud originally existed will become immaterial, in view of the defenses of limitation and *laches*. Moreover, in reviewing the question of knowledge, we will do so in the order stated—that is, first, discovery of the alleged fraud and misrepresentation as to the amount of fees collected and in process of collection from claims appropriated for at the time of the sale, and, second, discovery of the misrepresentation as to the amount of pending claims from which further fees were expected. Here, also, it is to be premised that if the first proposition be found to be well taken an examination of the second will be wholly unnecessary. This, obviously, is the case, for as the Statute of Limitations began to run from the time when suit might have been brought to annul the sale, it results that the discovery of the falsity of any material and fraudulent representations by which the sale had been

induced gave rise to the right to commence an action to rescind, and therefore fixed the period when the Statute of Limitations commenced its course."

The court then entered upon the inquiry whether the schedules of earned fees given by Baker to Cummings immediately after the assignment were sufficient to convey to Cummings full information in regard to the amounts thereof.

After an analysis of the evidence on this point, the conclusion reached was thus announced: "That the evidence not only clearly, but beyond all question or dispute, overwhelmingly shows that if the false representations as to the earned fees were made as alleged, there was entire knowledge thereof by Cummings. And, for reasons heretofore stated, this conclusion renders unnecessary any inquiry into the question of when Cummings discovered the falsity of the alleged representations as to the amount of pending claims." The question to be decided was then stated:

"The question which arises is, can Cummings invoke the aid of a court of equity to afford him the relief which he seeks? A negative answer is compelled by a consideration of the most elementary principles."

Towards the conclusion of the opinion it is again said: "But the principle by which the bar of the Statute of Limitations is enforced by a court of equity, and upon which the doctrine of *laches* rests is, that equitable powers will not be exercised to discover whether one has been wronged when, with full knowledge of the alleged wrong, he has allowed the bar of the Statute of Limitations to arise, and has slept upon his rights until such a situation has arisen as to render it inequitable to afford him relief."

Then, as if to remove all doubt as to the real grounds of the decision, and at the same time to prevent any inference that actual fraud had been found to exist, the opinion concludes with the following words:

"Because we rest our conclusions upon the application of

the bar of the statute and the *laches* of Cummings, we must not be considered as intimating that we conclude that there was either clear and convincing proof, or even a preponderance of proof, that the sale was as claimed by Cummings."

It is further contended on behalf of the appellee, that the opinion shows an express adjudication that the entire demand of Cummings had been barred by the Statute of Limitations because of the lapse of more than three years between the discovery of the alleged fraud and the filing of the bill. This expression can only refer to the case before the court, which was the right to obtain cancelation of a contract on the ground of fraud, after the lapse of more than three years from time of discovery.

That, as we have seen, was the essential purpose of the bill; the account and its items sought to be established after that cancelation were not passed upon. In the present action, it is certainly true that all items of money received by Baker, more than three years before the entry of the plea of set-off, are barred by the Statute of Limitations; but as to items within that period it can not operate. The action of Cummings—treating his plea of set-off as substantially a cross-action—is founded on the items of money had and received. The assignment of the interest in those fees is the defense of Baker; and that defense, so far as fraud in its procurement affects the right of recovery, is open to attack. Cummings has simply failed to cancel it and remove it as a ground of defense through his unsuccessful appeal to equity. He has been remitted thereby to his less effective remedy at law, where the Statute of Limitations can apply only to his cause of action as set out in his plea, and not to the evidence necessary to support it, or to meet and overcome the defense of his adversary.

The conclusion that the decree in equity is not a conclusive adjudication of the merits of the issue joined in this action at law, is fully sustained by a decision of the Supreme

Court, heretofore cited. *Phelps* v. *Harris*, 101 U. S. 370, 376, 382.

The case at bar seems stronger than that. It was an action of ejectment. The plaintiff had first instituted a suit in the chancery court of Mississippi to remove a cloud upon his title to the land in controversy, raised by a partition made under the supposed power contained in the will of the testator under whom he claimed. This bill was dismissed on the ground recited, "the court being of the opinion that the complainants are not entitled to the relief prayed for in their bill, or to any relief in the premises from this court." On appeal to the Supreme Court of the State, the decree was affirmed.

In the action of ejectment, brought in the Circuit Court of the United States, that decree was pleaded as a conclusive adjudication of the title of the plaintiff. The denial of this effect in the Circuit Court was affirmed, on the ground that the decree amounted in reality, to nothing more than a refusal by the equity court to take jurisdiction, because the plaintiff's remedy, if any, was at law.

The opinion of the Supreme Court of Mississippi was examined to show that this was the ground of decision. But that opinion went much further and expressly declared the validity of the partition that had been assailed, and the title of the defendant thereunder.

Referring to that opinion Mr. Justice Bradley said:

"It is true that the court in the former part of its opinion discussed the question of the validity of the partition made by H. W. Vick and his son, and held that the partition was good, and that the title of Henry G. Vick to the lands in controversy was perfect; and, as a consequence, that the defendant's title was also perfect. But this discussion was entered into for the purpose of showing that the title of the defendant was not so devoid of validity as to constitute a mere cloud on the title; and consequently that the case was not one in which a court of equity could give relief. We

think, therefore, that the court below was right in determining that the decree in the equity case did not render the main controversy *res judicata*, but only decided that the bill would not lie; in other words, that it was not a proper case for a court of equity to determine the rights of the parties."

In disposing of the case on the merits, however, the learned justice, delivering the opinion of the entire court, adopted the opinion of the Supreme Court of Mississippi as a satisfactory disposition thereof. In doing so, he said :

"In disposing of the equity case on appeal, that court fully considered the power of the trustee, Henry W. Vick, both under the deed and under the will, and came to the unanimous conclusion that he had full power and authority to make the partition in question. As to the power under the will, the court had no doubt; and as to that given by the deed, they relied on the authority of *Abell* v. *Heathcote* and the opinions of Sugden and Fearne. And although this conclusion was not embraced in the decree so as to become *res judicata*, yet it was the ground on which the decree was rested."

Notwithstanding, then, that the decree was unqualified in its terms, and rendered under the mandate of the Supreme Court of the United States, we are constrained to hold that it did not render the question in issue here *res judicata*.

If we have erred, we have the satisfaction of knowing that the amount in controversy gives the appellee the right to obtain a review of our decision.

For the reasons given the judgment will be reversed, with costs, and the cause remanded, with direction to set aside the judgment rendered on the agreed statement, and award a new trial. It is so ordered.    *Reversed.*

Mr. Chief Justice ALVEY dissenting.

An application to the Supreme Court of the United States for a writ of *certiorari* was allowed.