THE WASHINGTON, ALEXANDRIA, AND GEORGETOWN STEAM-PACKET COMPANY, PLAINTIFFS IN ERROR, *v.* FREDERIC E. SICKLES AND TRUEMAN COOK.   THE WASHINGTON, ALEXANDRIA, AND GEORGETOWN STEAM-PACKET COMPANY, PLAINTIFFS IN ERROR, *v.* FREDERIC E. SICKLES AND TRUEMAN COOK.

Docket entries in the courts of the District of Columbia, as in Maryland, stand in the place of, and perhaps are, the record, and receive all the consideration that is yielded to the formal record in other States.

The record of a former suit between the parties, in which the declaration consisted of a special count, and the common money counts, and where there was a general verdict on the entire declaration, cannot be given in evidence as an estoppel in a second suit founded on the special count; for the verdict may have been rendered on the common counts.

This rule is not varied by the circumstance that after the verdict was rendered the court directed judgment to be entered for the plaintiffs on the first count in the declaration, being the special count.

The authorities upon the doctrine of estoppel examined.

THESE two cases were brought up by writ of error from the Circuit Court of the United States for the District of Columbia.

They related to the same subject-matter, and were argued together. The first case was an action brought by Sickles and Cook for their share of the earnings of the steam-packet company by the use of their cut-off from March 13, 1846, to October 19, 1846; the second for the same earnings from October 13, 1846, up to December 26, 1855.

The case was before this court at a preceding term, viz: December term, 1850, and is reported in 10 Howard, 419. The suit there was for earnings from 20th August, 1844, to March, 1846.

When the mandate went down a new trial was had, (the judgment of the court below having been reversed by this court,) which took place at October term, 1855. The plaintiffs below, Sickles and Cook, had in the mean time amended their pleadings according to the evidence as given on the first trial, by making the declaration consist of a special count and the common money counts. The record entries were as follows, relative to this trial in 1855:

Narr. Non assumpsit and issue.

November 22. Jury sworn; verdict for plaintiffs; damages $1,695.79, with interest from March 16, 1846; verdict rendered 7th December.

December 14. Judgment for plaintiffs on the first count in the declaration.

December 14, 1855. Appeal bond, writ of error, citation, &c.

The writ of error thus sued out was not prosecuted, and the case was docketed and dismissed, under the rule, with costs, on December 19, 1856. Of course this was done at the instance of the counsel for Sickles and Cook.

On the 26th of December, 1855, the suits now in question were brought by Sickles and Cook. The declaration consisted of two special counts and the common money counts, which were afterward abandoned, and the case went to trial on the two special counts. It resulted in a verdict for the plaintiffs for $16,388.25.

On the trial of each of the two last-mentioned cases in the court below, the plaintiffs contended that by the verdict and judgment rendered in the case tried in 1855, between said plaintiffs and defendant, the existence of the contract as set forth in the two first counts of their declarations in said causes, (which was identical with that set forth in the declaration in said first-mentioned cause,) and the rate of saving ascertained by said experiments, were judicially settled between said plaintiffs and defendant; and that in all subsequent suits between the same parties on said contract, the said defendant was estopped to deny the same, or the rate of saving fixed by the experiment provided for by said contract, and the court below so ruled.  The defendant excepted to the ruling of the court, and presented objections in various forms by different exceptions.

The reader will perceive that the principal question brought before this court by the bills of exception was that relating to the doctrine of estoppel, when taken in connection with the order of the Circuit Court passed on the 14th December, 1855, ordering judgment to be entered on the first count of the declaration.

The case was argued by *Mr. Badger* and *Mr. Carlisle* for the plaintiffs in error, and by *Mr. Bradley* and *Mr. Stone* for the defendants.

The whole doctrine of estoppel was reviewed, and also that of docket entries as being records.  In order to give some account of the views of the counsel upon the first subject, the following may be referred to as a small branch of the argument.

The counsel for the plaintiff in error said:

Now, the rule we take to be this.  If, in the former proceeding, the title of the party has been *directly* alleged, and *an issue taken upon it which involves no other matter*, or if any fact being part of that title has been thus *separated from all other matters* and made the point of an issue, the finding upon it may in such subsequent suit be relied on in pleading as a technical

estoppel, and not otherwise. And that where in the former suit there has not been such separation of the title from all other matters, but the same has been involved in a general issue with other matters, whether this arise from the mode of pleading adopted by the parties, or required by the nature of the action, no finding thereon can either establish or disaffirm the title so as to estop either of the parties in a subsequent suit; and that if it cannot operate as an estoppel by pleading, neither can it have the effect of an estoppel when given in evidence to the jury.

This is the undoubted law in England; which is proved by the case of Outram *v.* Morewood, already cited, where Lord Ellenborough shows the true nature and office of an estoppel as distinguished from a bar; by the case of Evelyn *v.* Hayes, cited with approbation in Outram *v.* Morewood, and tried before Lord Mansfield, which is precisely in point; by Hooper *v.* Hooper, McCl. and Young, 509, where, in an action for obstructing a way, the record of a verdict and judgment for the plaintiff in a former action, had on the plea of not guilty, was given in evidence, and it was held not to be conclusive of the plaintiff's right so as to prevent the defendant from going into his case; by Miles *v.* Rose, 5 Taunt. 704; and by the case of Carter *v.* James, 13 M. and W., 137; and there is no English case to the contrary.

It is true that different views prevail in the several States of the Union—some holding the English doctrine, and some admitting, in aid of the record, parol evidence to show on what points the case turned, of the most dangerous and latitudinarian scope and tendency, upon the notion that certainty was to be obtained by evidence in its nature the most uncertain, and that there was no danger in allowing one trial upon a general issue to conclude a question of title.

Mr. Justice GRIER, when delivering the opinion of this court, in the case of Richardson *v.* Boston, (19 How.,) takes notice of this contrariety of opinion in the several States; and we submit that the present is a fit occasion for this high tribunal to lay down a rule which may tend to introduce order and consistency into the decisions in the States, and at all events

to establish the true rule in this District. Here the court is trammeled by no State decisions establishing a local law, to which respect must be paid, whether right or wrong.

And we submit that the English decisions are in every respect entitled to the highest authority. They show the rule of the English law from the earliest times—from the Year Books down—of that common law which was brought over by our ancestors and established here, which is still maintained in many of the States in its original simplicity and directness, and which ought not to be subject to capricious variations by judges speculating how, in this age of progress, they can amend what they have no rightful authority to alter— what they are appointed to expound, and apply, and preserve, until the legislative power shall interpose to change it.

If this court should adopt the exposition of the law established in England, the rule is clear beyond controversy, that in a second action for a second injury to the same right or title, a verdict and judgment for a plaintiff on the plea of not guilty in a former suit cannot be used as an estoppel in pleading, and cannot be conclusive of the right when given in evidence to the jury.

And does not this rule apply to and settle our case? Ours is an action of assumpsit. There is no English case in assumpsit to which the rule has been applied, because no case has happened in which it could have been applied. Before Slade's case, as Lord Loughborough has shown, this action was never brought to recover a debt under the name of damages, but only to recover special damages for a breach of promise, as, for example, to recover on account of a breach of a promise to deliver corn, by which the plaintiff was obliged to buy corn at a higher price.

See Rudder *v.* Price, 1 Hen. Bl., pages 550 and 551, n. (a.)

Since the 29 Car. II no such case could well arise, since all contracts not to be performed within a year were avoided by that statute, unless reduced to writing, and signed by the party to be charged therewith. Hence, cases resting upon mere verbal evidence could not present such a question, and if

the contract was in writing, there would be no occasion to call in the aid of the former proceedings. But no case on an as sumpsit where this question could have arisen has been found, so far as we know, in any English reports. Nothing is said against the application of the rule to it; nor intimated, and the case now before the court is precisely within the principle on which the cases establishing the rule are founded.

Upon the particular point decided by this court the counsel for the defendants in error said:

III. Are the plaintiffs to be deprived of the benefit of the estoppel for the reason that, when the verdict was rendered, the declaration, in addition to the special count in the contract, contained also common counts?

The jury by their verdict necessarily found the statements of fact in all the counts of the declaration to be true. The theory of several counts is that they represent distinct and independent transactions, otherwise the declaration would be subject to the charge of duplicity. When the verdict was rendered the plaintiffs might have had it entered on the first count, and the judgment following the verdict, there could have been no question as to the estoppel in this case, (if there can be an estoppel in any case,) for that count sets forth the contract and experiment, with the result of it.

This will hardly be doubted. Yet why is it, if not because the verdict found the truth of the allegation in each count?

Although the plaintiffs did not, when the verdict was rendered, have it entered on the first count alone, yet they subsequently had the verdict amended and applied to that count by the court, who were satisfied that the evidence given applied to it, and not to the other counts. That the court had power to do this is well settled, and an amendment may be made even after writ of error brought and argued in the upper court.

See Matheson, administrator, *v.* Grant, administrator, 2 Howard, 281, 282.

See Stockton et al. *v.* Bishop, 4 How., 167.

Bank of the United States *v.* Moss, 6 How., 39, shows that

at a subsequent term, after judgment has been arrested, the verdict may be amended and applied to the good count.

. See, also, Parker *v.* Turner et al., 12 How., 45, as to amendments of verdicts at common law, and also the effect of the 32d section of the Judiciary act of 1789. If courts have power to amend verdicts for one purpose, there can be no good reason why they should not for another, when the amendment is made to apply the verdict to the count on which the testimony was given, particularly when the one purpose is as meritorious as the other. It may be that the amendment of the verdict in the case tried in 1855 is not regularly noted, but it is sufficiently shown by the entry of the judgment, by order of court, as the judgment must follow the verdict. This could not have been urged in a direct proceeding on that judgment, but would have been cured by the 32d section of the Judiciary act of 1789.

See 12 How., 45, and 4 How., 167.

It can hardly be an objection in a collateral proceeding.

This doctrine of estoppel is not a mere technical rule, tending to exclude truth, but it is based on sound principles of public policy. Society has an interest in putting an end to litigation, and preventing the unnecessary repetition of it. Courts are established for the benefit of the community, not to encourage the litigious spirit of individuals. This case is a striking illustration of the necessity of such a rule. The trial of the questions now disputed occupied the time of the court and jury below for fourteen business days. It does not appear that there was a motion for a new trial; if made, it was overruled before judgment was entered.

No writ of error was prosecuted.

Under such circumstances, public policy forbids a retrial of facts thus established.

The defendants had a fair trial as to the contract—had nine years to prepare for the trial, and should now abide by its result.

See Greenleaf on Evidence, vol. 1, sec. 531, R. 2.

Broom's Legal Maxims, p. 131.

"Interest republicæ ut sit finis litium."

Mr. Justice CAMPBELL delivered the opinion of the court.

The defendants in error, as plaintiffs, sued the plaintiffs in error, in assumpsit in the Circuit Court, upon a special parol contract, purporting to have been made in 1844, to the effect that they having a patent for Sickles's cut-off, for saving fuel in the working of steam-engines, and the defendants being the owners of a certain steamboat, it was agreed between them that the said patentees should attach to the engine of the defendants one of their machines; and that the defendants should pay for the use thereof three-fourths of the saving of fuel produced thereby, the payments to be made from time to time, when demanded. That, to ascertain the saving of fuel, an experiment should be made in the manner described in the declaration, and that the result should be taken as the rate of saving during the continuance of the contract, which was to be as long as the patent and the steamboat should last. The plaintiffs aver, that the experiment had been made, and the rate of saving had been duly ascertained; and that the machine had been used in connection with the engine on the said boat, until the commencement of the suit.

In the first count of the declaration, the plaintiffs further stated, that they brought, in March, 1846, a suit on this contract in the Circuit Court for the sum then due, and had obtained a verdict and judgment therefor in the Circuit Court in 1856, and had thus established conclusively the contract between the parties. These last allegations are not contained in the second count. The defendants pleaded the general issue.

The plaintiffs produced upon the trial, as the only testimony of the contract, the proceedings of the suit mentioned in the declaration, and insisted that these proceedings operated as an estoppel upon the defendants. These proceedings consisted of a writ, a declaration, containing two counts upon the contract, and the common counts, and the plea of the general issue; also a docket entry of a general verdict, in favor of the plaintiffs, on the entire declaration, and a docket entry of judgment, subsequently rendered on the first count—a count similar to the counts in the declaration in the present suit. The defendants objected to these docket entries as evidence

of a verdict and judgment; but insisted they were simply memoranda or minutes, from which a record of a verdict and judgment were to be made.   It appears that in the courts of this district, as in Maryland, the docket stands in the place of, or, perhaps, is the record, and receives here all the consideration that is yielded to the formal record in other States.   These memorials of their proceedings must be intelligible to the court that preserves them, as their only evidence, and we cannot, therefore, refuse to them faith and credit.   Bateler *v.* State, 8 G. and J., 381; Ruggles *v.* Alexander, 2 Rawle, 232. Besides this testimony of the contract, the plaintiffs proved the quantity of the fuel that had been used in the running of the boat, and relied upon the rate as settled to determine their demand, and insisted that the defendants were estopped to prove there was no such contract; or to disprove any one of the averments in the first count of the declaration in the former suit; or to show that no saving of the wood had been effected; or to show that the so-called experiment was not made pursuant to the contract, or was fraudulently made, and was not a true and genuine exponent of the capacity of the said cut-off; or to prove that the said verdict was in fact rendered upon all the testimony and allegations that were submitted to the jury, and was in point of fact rendered, as by the docket entry it purports to have been, upon the issues generally, and not upon the first count specially.

The Circuit Court adopted these conclusions of the plaintiffs, and excluded the testimony offered by the defendants, to prove those facts.

The authority of the *res judicata*, with the limitations under which it is admitted, is derived by us from the Roman law and the Canonists.   Whether a judgment is to have authority as such in another proceeding, depends, *an idem córpus sit; quantitas eadem, idem jus; et an eadem causa petendi et eadem conditio personarum; quæ nisi omnia concurrent alia res est;* or, as stated by another jurist, *exceptionem rei judicatæ, obstare quotiens eadem qæstio inter easdem personas revocatur.*   The essential conditions under which the exception of the *res judicata* becomes applicable are the identity of the thing demanded, the identity of

the cause of the demand, and of the parties in the character in which they are litigants. This court described the rule in Apsden *v.* Nixon, (4 How. S. C. R., 467,) in such cases to be, that a judgment or decree set up as a bar by plea, or relied on as evidence by way of estoppel, must have been made by a court of competent jurisdiction upon the same subject-matter, between the same parties for the same purpose. The thing demanded in the present suit is a sum of money, being a part of the consideration or price for the use of a valuable machine for which the plaintiffs had a patent, and is the complement of a whole, of which the sum demanded in the first count of the declaration in the former suit is the other part. The special counts in the declaration of each suit are similar, being framed upon this contract; and a decision in the one suit on those counts in favor of the plaintiffs necessarily included and virtually determined its sufficiency to sustain the title of the plaintiffs on it. It was, therefore, admissible as testimony. This conclusion is supported by adjudged cases, and the authority of writers on the law of evidence. Gardener *v.* Buckbe, 3 Cow., 120; Dutton *v.* Woodman, 9 Cushing R., 256; Bonnièr des Preuves, sec. 766; 8 Dalloz, Jur. Generale, 256, 257, 258. Buller, in his work on Nisi Prius, says: "If a verdict be had on the same point, and between the same parties, it may be given in evidence, though the trial were not had for the same lands, for the verdict in such a case is very persuading evidence, because what twelve men have already thought of the fact may be supposed fit to direct the determination of the jury. * * * It is not necessary that the verdict should be in relation to the same land; for the verdict is only set up to prove the point in question, and every matter is evidence that amounts to a proof of the point in question." B. N. P., 232. The plaintiffs in error contend that, conceding the record to be admissible as evidence, to render the verdict and judgment in the first suit an estoppel, it must be shown by the *record*, that the very point which it is sought to estop the party from contesting was distinctly presented by an issue, and expressly found by the jury, and that no estoppel by verdict and judgment can arise in an action on the case, or an

*Washington, Alexandria, & Georgetown S. P. Co. v. Sickles et al.*

action of assumpsit, tried upon the general issue, because in no such action can any precise point be made and presented for trial by a jury, and the cases of Outram *v.* Morewood, 3 East., 346, Vooght *v.* Winch, 2 B. and Ald., 662, are cited in support of this proposition. And the conclusion would seem to be proper for the attainment of the end, for which authority was allowed to the *res judicata* as testimony. Experience has disclosed, that for the security of rights, and the preservation of the repose of society, a limit must be imposed upon the faculties for litigation. For this purpose, the presumption has been adopted, that the thing adjudged by a court of competent jurisdiction, under definite conditions, shall be received in evidence as irrefragable truth.

This presumption is a guarantee of the future efficacy and binding operation of the judgment. It presupposes that all the constituents of the judgment shall be preserved by the court, which renders it in an authentic and unmistakable form. In the courts upon the continent of Europe, and in the courts of chancery and admiralty in the United States and Great Britain, where the function of adjudication is performed entire by a tribunal composed of one or more judges, this has been done without much difficulty. The separate functions of the judge and jury, in common-law courts, created a necessity for separating issues of law from issues of fact; and with the increase of commerce and civilization, transactions have become more complicated and numerous, and law and fact have become more closely interwoven, so as to render their separation more embarrassing. The ancient system of pleading, which was conducive to the end of ascertaining the material issue between the parties, and the preservation in a permanent form of the evidence of the adjudication, has been condemned as requiring unnecessary precision, and subjecting parties to over-technical rules, prolixity, and expense. A system of general pleading has been extensively adopted in this country, which rendered the application of the principle contended for by the plaintiffs impracticable, unless we were prepared to restrict within narrow bounds the authority of the *res judicata.* It was consequently decided that it was not neces-

sary as between parties and privies that the record should show that the question upon which the right of the plaintiff to recover, or the validity of the defence, depended for it to operate conclusively; but only that the same matter in controversy might have been litigated, and that extrinsic evidence would be admitted to prove that the particular question was material, and was in fact contested, and that it was referred to the decision of the jury.

In Young *v.* Black, 7 Cr., 565, this court admitted in evidence a record of a former suit between the parties, in which judgment was rendered for the defendant, supported by parol proof that the cause of action in the two suits was the same. The court say : " The controversy had passed in *rem judicatam'*; and the identity of the causes of action being once established, the law would not suffer them again to be drawn into question." The current of American authority runs in the same direction. Wood *v.* Jackson, 8 Wend., 9 ; Eastman *v.* Cooper, 15 Pick., 276 ; Marsh *v.* Pico, 4 Rawle, 288 ; Green. Ev., section 531.

In the case before the court, the verdict was rendered upon two special counts, and the general counts in assumpsit, but the verdict in the subsequent stage of the proceedings was applied by the court only to the first count. The record produced by the plaintiffs showed that the first suit was brought apparently upon the same contract as the second, and that the existence and validity of that contract might have been litigated: But the verdict might have been rendered upon the entire declaration, and without special reference to the first count. It was competent to the defendants to show the state of facts that existed at the trial, with a view to ascertain what was the matter decided upon by the verdict of the jury. It may have been that there was no contest in reference to the fairness of the experiment, or to its sufficiency to ascertain the premium to be paid for the use of the machine at the first trial, or it may have been that the plaintiffs abandoned their special counts and recovered their verdict upon the general counts. The judgment rendered in that suit, while it remains in force, and for the purpose of maintaining its validity, is conclusive of all the

facts properly pleaded by the plaintiffs. But when it is pre-
sented as testimony in another suit, the inquiry is competent
whether the same issue has been tried and settled by it. Mer-
riam *v.* Whittemore, 5 Gray, 316; Hughes *v.* Alexander, 5
Duer R., 488. The defendants in error contend the jury, by
their verdict, necessarily found the statements of fact in all the
counts of the declaration to be true; and the effect of a verdict
and judgment on the whole declaration and a verdict and
judgment on the first count is precisely the same, in producing
an estoppel, as respects the matters contained in that special
count. But this is not true. If the verdict had been rendered
on the special count in exclusion of the others, the record
itself would have shown that the existence and validity of the
contract were in question. There would have been no ground
for the inquiry whether any other issue was presented to the
jury. But where a number of issues are presented, the find-
ing on any one of which will warrant the verdict and judg-
ment, it is competent to show that the finding was upon one
rather than on another of these different issues. Henderson *v.*
Kenner, 1 Rich. R., 474; Sawyer *v.* Woodbury, 7 Gray, 499.
Nor do we think that the subsequent application of the verdict
to a single count by the court precludes this inquiry. The
authority of the courts to make the application, and the cir-
cumstances under which it is allowable, was considered by this
court in Matheson *v.* Grant, 2 How., 263. It is done for the
purpose of preventing the consequences of a misjoinder of
counts in a declaration, or of the union of insufficient counts
with others, so as to allow a valid judgment on the verdict. It
had no reference to the use that might be made of the proceed-
ings as testimony in another proceeding. In Maryland, the
power to amend the record in this form was conferred by the
act of 1809. 3 Maxey, Laws, 484. The case is not embraced
in the earlier act of 1785 upon this subject. 3 H. and J.; 9;
Ibid, 91. It is the opinion of the court, that the Circuit Court
erred in holding that the plaintiffs in error were estopped by
the proceedings in the former suit, for any inquiry in respect
to the matters in issue, and actually tried in that cause; and

its judgment is reversed, and the cause is remanded for furthei proceedings, in conformity with this opinion.