NORTON et al. v. HOUSE OF MERCY OF NEW YORK.

(Circuit Court of Appeals, Fifth Circuit.    April 16, 1900.)

No. 885.

RES JUDICATA—MATTERS CONCLUDED BY JUDGMENT—RIGHTS UNDER WILL.

Plaintiff, a charitable corporation organized under the laws of New York, by which it was given power to take and hold real estate not exceeding $50,000 in value, was made a beneficiary under the residuary clause of the will of a citizen of Kentucky.    After the testator's death his heirs brought a suit in the chancery court against the executors to determine their rights under the will, in which plaintiff appeared, and filed a petition of intervention setting up its claim as beneficiary thereunder.    The litigation resulted in a decision by the court of appeals of Kentucky which determined as a matter of fact that plaintiff, at the time of the testator's death, held real estate of the value of $50,000, and as matters of law that it was incapable of taking any real estate under the will, and that the residual real estate of the testator relapsed to his heirs.    *Held* that, while the Kentucky court could not adjudicate upon the title to lands situated in another state, its judgment was nevertheless conclusive between the parties and their privies as to each of the questions so determined, and estopped the plaintiff to maintain an action in another state against grantees of the testator's heirs to recover lands there situated, as passing to it under the will.

## In Error to the Circuit Court of the United States for the Northern District of Texas.

This suit of trespass to try title was originally instituted in the state district court by the defendant in error, House of Mercy of New York, a charitable corporation organized under the laws of New York, to recover an undivided one-half interest in 48 surveys of land situated in various counties of the state of Texas.    Several parties named as original defendants were dismissed from the suit, and as the record stood at the date of the trial the following were defendants: George W. Norton, executor, and Martha H. Norton, executrix, of the will of G. W. Norton, deceased, both citizens of the state of Kentucky; the Louisville Presbyterian Orphans' Asylum, and the Presbyterian Orphans' Home Society, corporations organized under the laws of the state of Kentucky; and Mrs. A. M. Finney, a resident of the District of Columbia.    The defendants interposed a plea of not guilty.    The cause having been removed to the circuit court for the Northern district of Texas, it was heard upon the following agreed statement of facts: "Now come the plaintiff and defendants in the above-styled suit, and agree on the following facts upon which said cause shall be tried in this court and the appellate courts to which said cause may be appealed: (1) It is agreed that the plaintiff is a private corporation created for charitable purposes, under an act of the legislature of the state of New York entitled an 'Act for the incorporation of benevolent, charitable, scientific and missionary societies,' passed by the legislature of the state of New York on the 12th day of April, 1848.    That said act, among other things, contained the following provision relating to the power and rights of said charitable institutions to hold and acquire property, to wit: 'And they and their successors, by their corporate name, shall in law be capable of taking, receiving, purchasing, and holding real estate for the purposes of their incorporation, and for no other purpose, to an amount not exceeding the sum of fifty thousand dollars in value, and personal estate for like purposes to an amount not exceeding seventy-five thousand dollars in value.'    (2) That plaintiff was incorporated under said act prior to the year 1860, and the purpose or object of its incorporation was and is the reclamation and reformation of fallen women; that its place of business was, and is now, and always has been, the city and state of New York.    (3) That plaintiff and defendant claim the land in controversy under

Isaac Cromie, deceased, as a common source of title. (4) The plaintiff claims said land under the will of said Isaac Cromie, deceased, who died August, 1865, a true copy of which is hereto attached, marked 'Exhibit A,' and made a part hereof, which will was duly probated in Louisville, Ky., according to the laws of that state, and that the executors accepted and qualified on the 16th day of August, A. D. 1865, and that a copy of such will, and of its probate properly attached, was filed and recorded in the office of the clerk of the county court of Young county, Tex., in the manner that deeds and conveyances are required to be recorded prior to the institution of this suit. (5) That plaintiff has never been in actual possession of the property in controversy, or exercised any visible act of ownership over it, such as the payment of taxes, etc. (6) That the defendants claim the land under a regular consecutive chain of transfers from and under the heirs of said Isaac Cromie, deceased, for a valuable consideration paid. (7) That on the 22d day of January, 1866, the heirs of Isaac Cromie, deceased, filed a suit in equity in the chancery court of Louisville, Ky., against Wm. Cromie and John Gill, as the executors of Isaac Cromie, deceased, and others, for the recovery of all the property mentioned in the sixth clause of Isaac Cromie's will, hereto attached as Exhibit A. A copy of the petition filed in said suit is hereto attached, marked 'Exhibit C,' and made a part hereof. (8) That the executors of said Isaac Cromie, deceased, answered said bill, and among other things alleged the claims of the plaintiff herein to the property mentioned in the sixth clause of said will, and also alleged that there was another corporation in the city of New York known as the 'Institution of Mercy of New York,' claiming to be the corporation intended as the beneficiary under the sixth clause of said will, and said executors prayed that both of said corporations, as well as the Presbyterian Orphans' Asylum of Louisville, another claimant under the sixth clause of said will, all be made parties to this suit, and litigate their rights to the property involved, and for an order and decree construing said will, and decreeing to whom said property belonged, to the end that said executors might be protected in the distribution of said estate. (9) That all of said corporations, to wit, the House of Mercy of New York, plaintiff herein, the Institution of Mercy of New York, and the Presbyterian Orphans' Asylum, each and all intervened in said cause, and filed pleadings therein, asserting their respective rights to portions of the property mentioned under the sixth clause of said will. The answer of the House of Mercy of New York, plaintiff herein, was filed in said cause on the 13th day of July, 1866, and was duly sworn to by W. F. Bullock, one of its attorneys of record in said cause. Said plea of intervention or cross petition averred, among other things, that 'it, the House of Mercy of New York,' was the corporation intended as the object of Isaac Cromie's munificence and charity, as set forth under the sixth clause of said will. Said House of Mercy also alleged and averred its rights to said property as against the heirs of said Isaac Cromie, deceased, the plaintiffs in said suit aforesaid. (10) That afterwards, on the 24th day of May, 1867, said chancery court of Louisville, Ky., rendered a decree in said cause, in which it decreed that the Presbyterian Orphans' Asylum was entitled to recover one half of the property named under the sixth clause of said will, and that the Institution of Mercy of New York was entitled to receive the other half of said property, and that the plaintiffs in said cause, as the heirs of Isaac Cromie, deceased, and the House of Mercy of New York, were entitled to nothing, and from which said judgment or decree both plaintiffs in said cause and the House of Mercy of New York prosecuted appeals to the court of appeals of the state of Kentucky. (11) That the court of appeals of said state, on May 27, 1868, rendered its opinion and judgment in said cause, in which it affirmed the decree of the lower court as between the heirs of Cromie, appellants, and the Presbyterian Orphans' Asylum, but reversed said cause as to appellants and the other appellees and appellants therein; said court, among other things, deciding by its opinion therein rendered that the House of Mercy of New York, plaintiff herein, was the corporation intended by and under the sixth clause of said will, and not the Institution of Mercy of New York, as decreed by the court below. Said court in its said opinion further held and decided that as between the House of

Mercy of New York and appellants, as the heirs of said Isaac Cromie, deceased, the evidence showed that at the date of said Isaac Cromie's death the House of Mercy of New York owned and possessed real estate in value amounting to fifty thousand dollars or over; that it could not take any of Cromie's real estate under said will; and as to the real estate the appellant heirs of Cromie were entitled to recover. Said court in its said opinion further held and decided, as between said House of Mercy of New York and said appellant heirs, that said House of Mercy of New York, if it did not own and possess at Cromie's death personal property amounting in value to $75,- 000, should have set apart to it one-half of the personalty named under the sixth clause of said will, or a sufficient amount thereof to make, with what it already owned, the sum of $75,000, and said cause was remanded to the lower court, with instructions to refer said cause to a master to ascertain and report the value of the personal property owned by the House of Mercy of New York at the date of Cromie's death, and with directions to the chancery court, if the House of Mercy held personal property amounting in value to less than $75,000, to decree it one-half of Cromie's personal estate mentioned under the sixth clause of said will, or a sufficient amount thereof, if the same existed, to make, in the aggregate, with what it already held, the sum of $75,000. The opinion of said court at length is referred to in 3 Bush, 365–401, and to which reference is here made, and to be used by either party hereto. (12) On the filing of the mandate in the court below, said cause was referred to a master, who found the value of the personal estate of said House of Mercy at the date of Cromie's death to be $678.75. (13) That on the —— day of ——, 1869, the House of Mercy of New York filed in said chancery court of Louisville, Ky., its cross petition, in the nature of an original bill, against the heirs of said Isaac Cromie, in which it sought to have a decree entered in said cause directing a sale of all the realty belonging to said estate in Kentucky, and converted into personal property, and one-half of the proceeds thereof, or a sufficient amount of same, to be paid to it to make the sum of $74,321.25, to which amount of personalty it was entitled under the master's report, and the decision of the court of appeals therein previously rendered, a copy of which said bill is hereto attached, marked 'Exhibit D,' and made a part hereof. (14) That a demurrer was interposed, and by the court sustained, to said bill, from which judgment of the court the House of Mercy appealed. (15) That the court of appeals of Kentucky affirmed the judgment of the court below sustaining said demurrer, in a written opinion, a copy of which is hereto attached, marked 'Exhibit E,' and made a part hereof. (16) That under the orders of the chancery court of Louisville, Ky., in which said proceedings were pending, the House of Mercy of New York, plaintiff herein, from time to time received the following amounts of money, stocks, and bonds, to wit: Cash, $8,050.50; 21 U. S. bonds, 5–20 bonds, of the denomination of $1,000.00 each, $21,000.00; 60 shares of preferred stock of the Louisville, Cincinnati & Lexington R. R. Co., each $100.00 par value; 470 shares of the Louisville & Frankford R. R. Co. stock (common), each share of the par value of $50.00; 29 2/5 shares of stock in the Louisville & Nashville R. R. Co., of the par value each of $100.00; 20 shares of the common stock of the Louisville, Cincinnati & Lexington R. R. Co., of the par value of $100.00; 13 shares of the Franklin Fire & Marine Insurance Co. stock, each of the par value of $50.00; also 50 shares of the Franklin Saving Bank; and also 100 shares of the Southern Pacific R. R. stock. (17) That there has never been any partition of the residuary portion of Isaac Cromie's real estate between the House of Mercy of New York and the other residuary legatee, under the sixth clause of said Cromie's will. (18) It is further agreed that either party hereto may introduce any additional testimony to that set out in the foregoing statement that may be desired, subject, however, to such legal objections as may be made to the introduction of such additional evidence. (19) It is further agreed that the lands in controversy exceed ten thousand dollars in value."

The foregoing stipulation of counsel recites that the petition, filed by Isaac Cromie's heirs in the chancery court of Louisville, Ky., against the executors named in Cromie's will, was attached as Exhibit C. This exhibit is not contained in the record, for the reason, presumably, that counsel re-

garded its insertion as unnecessary. Exhibits A, D, and E form a part of the record, but it is not deemed essential to incorporate them in this statement.

Upon the trial the court directed a verdict for the defendant in error, and judgment was rendered thereon in its behalf for an undivided one-half interest in the lands described in the petition. To this ruling the plaintiffs in error duly excepted, and to reverse the judgment thus rendered this writ of error is prosecuted.

Seth W. Stewart and Thos. W. Bullitt, for plaintiffs in error.

Chas. K. Bell, A. M. Carter, and R. F. Arnold, for defendant in error.

Before PARDEE, Circuit Judge, and NEWMAN and MAXEY, District Judges.

MAXEY, District Judge, after stating the case, delivered the opinion of the court.

The important question to be decided in this case arises upon the third assignment of error, which devolves upon the court the duty to ascertain how far the litigation, prosecuted in the courts of Kentucky by the defendant in error, the heirs of Isaac Cromie, and others, may be determinative of the present controversy. It is insisted by the plaintiffs in error that the defendant in error is estopped from asserting title to the real estate involved in this suit, because the question to be determined by the circuit court was whether the title to the real estate devised to the House of Mercy of New York by the sixth clause of Isaac Cromie's will passed to it, or to the heirs by descent cast, and that precise question was distinctly presented and directly passed upon adversely to the House of Mercy by the Kentucky courts in suits in which it and the heirs of Isaac Cromie were parties. The law in respect to estoppel by judgments seems to be well settled, although there is frequently difficulty in applying the law to the facts of a particular case. In the early case of Hopkins v. Lee, 6 Wheat. 114, 115, 5 L. Ed. 218, it is said by the court:

"It is not denied, as a general rule, that a fact which has been directly tried and decided by a court of competent jurisdiction cannot be contested again between the same parties, in the same or any other court. Hence a verdict and judgment of a court of record or a decree in chancery, although not binding on strangers, puts an end to all further controversy concerning the points thus decided between the parties to such suits. In this there is and ought to be no difference between a verdict and judgment in a court of common law and a decree of a court of equity. They both stand on the same footing, and may be offered in evidence under the same limitations, and it would be difficult to assign a reason why it should be otherwise. The rule has found its way into every system of jurisprudence, not only from its obvious fitness and propriety, but because without it an end could never be put to litigation. It is therefore not confined, in England or in this country, to judgments of the same court, or to the decisions of courts of concurrent jurisdiction, but extends to matters litigated before competent tribunals in foreign countries."

The rule and the reasons for it are admirably stated by Mr. Justice Harlan in the comparatively recent case of Southern Pac. Co. v. U. S., 168 U. S. 48, 49, 18 Sup. Ct. 27, 42 L. Ed. 355, and he applies it not only to cases where the former and subsequent suits are the same, but also where the latter is for a different cause of action.

101 F.—25

The learned justice in the case referred to declares the rule in the following language:

"The general principle announced in numerous cases is that a right, question, or fact, distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them. Among the cases in this court that illustrate the general rule are Hopkins v. Lee, 6 Wheat. 109, 113, 5 L. Ed. 218; Smith v. Kernochen, 7 How. 198, 216, 12 L. Ed. 666; Thompson v. Roberts, 24 How. 233, 240, 16 L. Ed. 648; Packet Co. v. Sickles, 24 How. 333, 340, 341, 343, 16 L. Ed. 650; Russell v. Place, 94 U. S. 605, 608, 24 L. Ed. 214; Cromwell v. Sac Co., 94 U. S. 351, 24 L. Ed. 681; Campbell v. Rankin, 99 U. S. 261, 25 L. Ed. 435; Lumber Co. v. Buchtel, 101 U. S. 638, 25 L. Ed. 1073; Bissell v. Spring Valley Tp., 124 U. S. 225, 230, 8 Sup. Ct. 495, 31 L. Ed. 411; Johnson Steel Street Rail Co. v. William Wharton, Jr., & Co., 152 U. S. 252, 14 Sup. Ct. 608, 38 L. Ed. 429."

Last Chance Min. Co. v. Taylor Min. Co., 157 U. S. 683, 15 Sup. Ct. 133, 39 L. Ed. 859; New Orleans v. Citizens' Bank, 167 U. S. 371, 17 Sup. Ct. 905, 42 L. Ed. 202; Hubbell v. U. S., 171 U. S. 203, 18 Sup. Ct. 828, 43 L. Ed. 136; Hanrick v. Gurley (decided by the supreme court of Texas, March 29, 1900, and not yet officially reported), 56 S. W. 330. And it is equally well settled that, if the questions raised in the second suit were presented and directly passed upon in the first, the judgment rendered in the first suit imports absolute verity, whether the reasons upon which it was based were sound or not, or whether the judgment was right or wrong upon the facts presented. Hubbell v. U. S., supra; New Orleans v. Citizens' Bank, supra.

The question, then, to be considered is whether the principles of law, so clearly and repeatedly announced by the courts, apply to the facts of this case. It will be observed that the written stipulation of the parties makes the will of Isaac Cromie, the two decisions of the court of appeals of Kentucky, and the cross petition, in the nature of a cross bill, filed by the House of Mercy of New York against the heirs of Isaac Cromie, a part of the agreed statement of facts upon which the case was tried. If we consider the record as thus made by the parties, there would seem to be little difficulty in reaching the conclusion that the defendant in error is estopped from denying or questioning the correctness of the judgment rendered by the courts of Kentucky. In the present suit the House of Mercy of New York was plaintiff in the court below, and the written stipulation of the parties discloses that the defendants below claim the land in controversy by regular chain of transfers from and under the heirs of Isaac Cromie for a valuable consideration paid. The material controlling issue in the court below was whether

the House of Mercy took the real estate devised by the sixth or residuary clause of Cromie's will, or whether the real estate attempted to be devised by that clause of the will passed to Cromie's heirs. And that issue could only be determined by considering and giving a construction to the laws of New York under which the House of Mercy was incorporated. The heirs of Cromie inaugurated the litigation in Kentucky by filing on the 22d day of January, 1866, in the chancery court of Louisville, a bill against Isaac Cromie's executors and others for the recovery of all the property mentioned in the sixth clause of Cromie's will. Without attempting to give a history of the proceedings, it is sufficient to say that the House of Mercy and another New York corporation known as the "Institution of Mercy," and the Presbyterian Orphans' Asylum of Louisville, intervened in the suit. The question to be decided by the chancery court was, who took the residual real and personal estate mentioned in the sixth clause of Isaac Cromie's will, which reads as follows:

"I give, devise, and bequeath all the rest and residue of my estate, real, personal, and mixed, of which I shall be seised and possessed, or which I shall be entitled to at the time of my decease, in as nearly equal amounts or parts as may be, say one-half to the Presbyterian Orphan Asylum of Louisville, and the remaining one-half to the House of Mercy of the City of New York, to be divided equally within two years, or sold within five years, and the proceeds accruing to be divided as previously set forth."

Whether the House of Mercy was capable of taking and holding real estate depended upon the law of its creation, and the laws of New York at that time applicable to the House of Mercy, and other charitable institutions organized thereunder, provided as follows:

"And they and their successors by their corporate name shall in law be capable of taking, receiving, purchasing and holding real estate for the purposes of their incorporation and for no other purpose to an amount not exceeding the sum of fifty thousand dollars in value, and personal estate for like purposes to an amount not exceeding seventy-five thousand dollars in value."

Upon consideration of the case, the chancellor divided the residuary estate between the Louisville Orphans' Home Society and the Institution of Mercy, and from that decree Cromie's heirs and the House of Mercy appealed to the Kentucky court of appeals. It was held in the court of appeals that, as between the House of Mercy and the Institution of Mercy, the most rational deduction was that the New York beneficiary intended by the testator, Isaac Cromie, was the House of Mercy of New York. But, in reference to the claim of the House of Mercy to the real estate, the court denied its capacity to take, on the ground that the value of its real estate, as shown in the record, exceeded $50,000 at the time of Cromie's death. "None of the real estate," said the court, "devised that corporation, should therefore be adjudged to it in this case, but relapses to the testator's heirs, and should be decreed to them." 3 Bush, 384, 385; Buckner's Ex'rs v. Cromie's Ex'rs, 5 Bush, 603. "The court in its opinion further held," employing the language used by the parties in their written stipulation, "and decided, as between the House of Mercy and said appellant heirs, that the House of Mercy of New York, if it

did not own and possess at Cromie's death personal property amounting in value to $75,000, should have set apart to it one-half of the personalty named under the sixth clause of the will, or a sufficient amount thereof to make, with what it already owned, the sum of $75,000, and the cause was remanded to the lower court, with instructions to refer it to a master to ascertain and report the value of the personal property owned by the House of Mercy of New York at the date of Cromie's death, and with directions to the chancery court, if the House of Mercy held personal property amounting in value to less than $75,000, to decree it one-half of Cromie's personal estate mentioned under the sixth clause of the will, or a sufficient amount thereof, if the same, existed, to make in the aggregate, with what it already held, the sum of $75,000.   *   *   *   On the filing of the mandate in the court below, the cause was referred to a master, who found the value of the personal estate of the House of Mercy at the date of Cromie's death to be $678.75. That on the —— day of ——, 1869, the House of Mercy of New York filed in said chancery court of Louisville, Ky., its cross petition, in the nature of an original bill, against the heirs of the said Isaac Cromie, in which it sought to have a decree entered in the cause directing a sale of all the realty belonging to said estate in Kentucky, and converted into personal property, and one-half the proceeds thereof, or a .sufficient amount of same, to be paid to it to make the sum of $74,321.25, to which amount of personalty it was entitled under the master's report and the decision of the court of appeals therein previously rendered." The cross petition, in the nature of an original bill, filed by the House of Mercy, expressly recognized, in the following allegations, the ruling and order of the court of appeals as a real, subsisting judgment: "This judgment of the court of appeals was qualified by the direction of said court, in the opinion delivered and now on file herein, that no part of the real estate of the testator should be given to this defendant, because her charter restricted the corporation to holding a value not exceeding $50,000 of real estate, which value it was adjudged belonged to, and was held by, said corporation at the time of the testator's death." To the cross petition of the House of Mercy a demurrer was interposed and sustained, and from that order the House of Mercy again appealed to the court of appeals. Upon affirming the judgment of the chancery court upon this appeal, the court in the opinion in the record, but not reported, used this emphatic language: "And the will of the testator to that extent executed to the one half of the residual or real estate this court has adjudged the heirs of the testator are entitled, and to the other half the Presbyterian Orphans' Asylum of Louisville is entitled under the will of the testator; and of these rights this court has no more power to devest the parties than it has to make a will for the testator." It is also disclosed by the record that the House of Mercy received, under the orders of the chancery court of Louisville, $8,050.50 in cash and bonds and stocks, of the approximate par value of $66,000. From an analysis of the proceedings, it thus clearly appears that the issue submitted to the circuit court in this case was distinctly presented to, and directly decided by, the court of

last resort in the state of Kentucky adversely to the defendant in error. That issue—that is, the right of the defendant in error to take the real estate devised by the sixth clause of Cromie's will—involved questions of both law and fact. The court of appeals of Kentucky found as a fact that, at the date of Cromie's death, the House of Mercy had real estate exceeding in value $50,000, and adjudged, as matter of law, that it was incapable of taking additional real estate under the will, because of restrictions placed upon such corporations by the laws of New York, and further adjudged that the residual real estate mentioned in the will relapsed to Cromie's heirs. The facts thus found must be taken as conclusively established, and the judgments thus rendered, whether right or wrong, import absolute verity, and the House of Mercy of New York, the present defendant in error, is forever estopped from disputing their correctness.

But counsel for the defendant in error insist, if we correctly understand their contention, that judgments rendered by the courts of Kentucky cannot affect the title to real estate situated in Texas. "It is a principle firmly established," said the supreme court in De Vaughn v. Hutchinson, 165 U. S. 570, 17 Sup. Ct. 461, 41 L. Ed. 827, "that to the law of the state in which the land is situated we must look for the rules which govern its descent, alienation, and transfer, and for the effect and construction of wills and other conveyances." U. S. v. Crosby, 7 Cranch, 115. 3 L. Ed. 287; Clark v. Graham, 6 Wheat. 577, 5 L. Ed. 334; McGoon v. Scales, 9 Wall. 23, 19 L. Ed. 545; Brine v. Insurance Co., 96 U. S. 627, 24 L. Ed. 858. See, also, Jones v. Habersham, 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 401; Moseby v. Burrow, 52 Tex. 396; Osborne v. McCartney, 121 Ill. 408, 12 N. E. 72. This well-recognized principle of law is not questioned by this court. Its application, however, to the facts of the present case is more apparent than real. The courts of Kentucky did not by their judgments attempt to alienate, transfer, or otherwise affect the title to real estate in Texas. They held, in effect, that, under the laws of New York, a New York corporation was incapable of taking a greater quantity of real estate than those laws authorized or permitted. And such was precisely the view subsequently taken by the court of appeals of New York in the well-known case of In re McGraw's Estate, 111 N. Y. 66, 19 N. E. 233. But, should the defendant in error look to the laws of Texas for relief, it would be confronted with the solemn judgment of the supreme court of that state, delivered in one of its own cases (House of Mercy v. Davidson, 90 Tex. 532, 39 S. W. 924), that the title to the land mentioned in the residuary clause of Cromie's will did not vest in the defendant in error, "because the corporation was without capacity to receive and hold it at the time the will took effect."

In view of the disposition made of the case, it is deemed unimportant to consider other assignments of error pressed upon our attention. The judgments of the courts of Kentucky operating, as we have shown, as an effectual bar to a recovery by the defendant in error in this suit, the circuit court should have directed a verdict in favor of the plaintiffs in error. For the error committed the

judgment will be reversed; and, as the parties have stipulated that the cause should be tried in this court upon the agreed statement of facts, judgment will be here rendered that the defendant in error take nothing by its suit, and that the costs of both courts be taxed against it. Ordered accordingly. Reversed and rendered.