OLYMPIA VENEER COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 29341, 32329. Promulgated March 25, 1931.

*Cassius E. Gates, Esq.*, and *Joseph M. Nievinski, Esq.*, for the petitioner.

*J. Arthur Adams, Esq.*, for the respondent.

896

902

OPINION.

MATTHEWS: We will first dispose of petitioner's contention that the tentative return filed for the year 1922 was sufficient to start the running of the statute of limitations and that assessment and collec-

tion of the tax for that year is barred. This contention is denied on the authority of the Supreme Court decision in *Florsheim Bros. Dry Goods Co.* v. *United States*, and *White* v. *Hood Rubber Co.*, 280 U. S. 453. The Court held that a tentative return showing no specific items of income or deductions could not be considered a return as required by statute and was not sufficient to start the running of the statute of limitations. The fact that the estimated tax was greater than the tax due on the completed return is not material. The case of *White* v. *Hood Rubber Co.*, relied on by the petitioner, was consolidated with the *Florsheim* case and the Supreme Court made no distinction, due to the fact that the tax shown on the tentative return was greater than that shown to be due on the final return.

The respondent in computing the tax for 1922, 1923, and 1924, disallowed the entire amounts of additional compensation voted at the end of each year on the ground that such amounts were dividends and not compensation for services rendered. For the year 1925, the respondent disallowed $2 of the $8 per day voted at the beginning of the year to be paid as compensation for that year, on the ground that this amount was a dividend.

The petitioner contends that all of the amounts disallowed which were paid to stockholder-employees as compensation for personal services actually rendered are deductible under the provision of section 234(a) of the Revenue Acts of 1921, 1924, and 1926, which allows as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. * * *

Whether the amounts disallowed by the respondent in the respective years were reasonable compensation for personal services, is a question of fact to be determined from all the evidence. *Woodcliff Silk Mills*, 1 B. T. A. 715; *United States* v. *Philadelphia Knitting Mills Co.*, 273 Fed. 657; *Botany Worsted Mills* v. *United States*, 278 U. S. 282.

This case is unique in that each stockholder owned the same amount of stock in the corporation, each stockholder was entitled and required to work for the corporation, each stockholder-employee was to receive the same rate of compensation, regardless of the job to which he was assigned, no person could become a stockholder without being elected to membership by a majority vote of the trustees, and any stockholder desiring to sell his stock was required first to offer to sell it to the company at the market value at that time, the market value being determined by the stockholders. Another unusual feature is that the stockholders who were elected as trustees

and officers of the corporation received no more for their services than did the stockholder-employees engaged on the various jobs in the plant, and such officers and trustees also worked in the plant along with the other members as much as their official duties would permit. Furthermore, the stockholders met often to discuss the problems of the manufacture of veneer.

Petitioner was the pioneeer in the manufacture of veneer for commercial use in the Pacific Northwest, and by its methods of operation and the improvements in the system of manufacture and in the machinery used, developed by its stockholder-employees, it has revolutionized the plywood industry in the Northwest. It was successful from the very beginning.

The board of trustees properly authorized the compensation and the additional compensation claimed for each of the respective years. In *Woodcliff Silk Mills, supra*, we said:

The amount of compensation which a corporation shall pay its officers for their personal service is, in the first instance, a matter within the judgment and discretion of its board of directors, and the only limitation upon the deduction of such amount for income-tax purposes is that the amount must be reasonable.

See also *Collins-McCarthy Candy Co.*, 4 B. T. A. 1280; *A. R. Swartz & Co.*, 5 B. T. A. 264; and *Standard Silk Dyeing Co.*, 9 B. T. A. 648.

The additional compensation was not voted or paid on the basis of stockholdings, but on the basis of time worked in the plant. There were some stockholders who received no additional compensation, and in the case of those who did, the amounts varied, showing that some did not work the entire time.

It is clear, from the resolutions adopted at the time the additional compensation was voted, that there was no intention of declaring a dividend on the stock of the corporation and that what the trustees had in mind (and also the stockholders, when they ratified the action of the trustees) was to pay as near adequate compensation for the services the stockholder-employees had rendered as the financial condition of the corporation would justify.

The regulations of the Treasury Department under the income tax acts provide that in general it is just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises in like circumstances. There were no like enterprises or like circumstances in the Pacific Northwest during the years in question.

Judged by results, the total compensation paid was reasonable. The company had a fair return on its outstanding capital stock for each of the years in question after payment of the additional com-

pensation: 11.89 per cent in 1922, 25.23 per cent in 1923, 25.35 per cent in 1924, and 19.78 per cent in 1925. In *Law and Credit Co.*, 5 B. T. A. 57, where the net income after deduction of salaries claimed represented a return on the invested capital of 7.97 per cent, 8.59 per cent, and 10.31 per cent, we held that this indicated that the salaries were not too high. In *Woodruff Lumber Co.*, 6 B. T. A. 515, we held that where the ratio of net profits to capital was 16.94 per cent, the salaries claimed were reasonable, taking into consideration the nature of the services, etc.

The evidence was undisputed that the output per man of petitioner was greater than in any other veneer plant in the Pacific Northwest and that the grade and quality of the veneer was far superior to that of any other manufacturer in the Pacific Northwest. Edward E. Westman, the only witness for respondent, who was one of the chief organizers of the petitioner and who was secretary-treasurer until early in 1923, and who was president of petitioner from then until his retirement from the corporation in June, 1924, corroborated the testimony of petitioner's witnesses to this effect. He also testified that the compensation allowed in all the years was no more than reasonable for the amount of work done, that the petitioner received full value for the compensation and bonus allowed while he was with the company, and that the stockholder-employees of the petitioner were more valuable than the average employees in other plants.

When the amount of additional compensation paid in 1923 is compared with the amounts paid in other years, the question might be raised as to the reasonableness of the amount paid in that year; but when we consider that the output was increased 10,000 feet per day, that the gross sales were nearly doubled, and that after payment of the additional compensation the company had a return of 25.23 per cent on its outstanding capital stock, we do not think the amount unreasonable. See *Rome Wire Co.*, 8 B. T. A. 369; *New York Talking Machine Co. et al.*, 13 B. T. A. 154; *United States* v. *Philadelphia Knitting Mills Co.*, *supra.*

Respondent has raised some question about the authorization of the additional compensation after the close of the year in which such additional compensation was accrued on the books of the corporation. The by-laws provide that the affairs of the corporation shall be managed by the board of trustees, and in each instance the additional compensation was voted by the board of trustees just prior to the close of the year for which such additional compensation was voted. At the annual stockholders' meeting in January of each succeeding year, the action of the board of trustees was ratified. We do not find that the by-laws were ever amended to require ratifica-

tion by the stockholders of the action of the board of trustees in determining the amount of compensation to be paid, and in our opinion the action of the stockholders was not necessary in order to fix the liability of the corporation to pay the amounts voted as additional compensation by the board of trustees.

A question was also raised by respondent as to whether the resolution of the trustees authorizing additional compensation for 1922 was actually written up in 1922. Westman, respondent's witness, who was secretary-treasurer of petitioner at the time, was uncertain as to whether the resolution of the trustees as to the additional compensation allowed for 1922 was actually passed on December 20, 1922, and stated that he believed the resolution was written up in January, 1923. He admitted that the question of paying the additional compensation for 1922 was discussed at the December meeting of the trustees. We do not think it is material when the resolution was actually written up. The minutes of the trustees' meeting held on December 20, 1922, state that such resolution was adopted then and the minutes of the annual stockholders' meeting, held in January, 1923, record the adoption of a resolution ratifying and confirming the action of the board of trustees " heretofore taken on December 20, 1922," authorizing the payment of additional compensation for 1922.

The fact that amounts were not determined until the end of the year, when the profits of the company could be determined, does not establish that they were dividends. In *Van De Kamps Holland Dutch Bakers*, 2 B. T. A. 1247, we said:

* * * Additional compensation or " bonus " payments have become, especially since this country entered the World War, a recognized form of salary payment, used for the purpose of retaining the interest of the employees in the business without at the same time incurring any obligation in advance of the payment. Services are performed for salaries which would otherwise be inadequate, the person rendering them expecting to receive such a bonus but the employer being under no obligation to pay it. Such payments also have in them an element looking to future services, the recipient anticipating a further similar payment if the business justifies it.

In the case of *Gary & Co.* v. *United States* (Ct. Cls.), 35 Fed. (2d) 968, a corporation agreed to pay a percentage of its earnings to its officer-stockholders. In this case the Court said:

The policy of agreeing to pay a percentage of the earnings before they are earned, or even a sum in the nature of a bonus after they are earned, is based primarily upon sound business principles. It stimulates the activity, diligence, and ambition of the employees in the case of a percentage of the profits, and in both the case of a percentage and of a bonus it enables the corporation to justly compensate its employees without beforehand incurring the obligation. * * *

The action of the board of directors under ordinary circumstances in fixing the salaries raises a fair presumption of reasonableness in such case, and this presumption is the stronger in this case because the practice of compensating

on what may be called a contingency was a settled policy of the corporation extending over a period of years prior to the years in question here and after these years, and in each year it was based upon the profits for that year. If the profits were small, the sum realized from the percentage was small, and if the profits were large, the sum so realized was larger, depending in each year upon the loyalty, vigilance, and intelligent effort, and the stimulated ambition of each of the parties. The success of the business was largely due to the individual efforts of these men, and the diligence they displayed and attention they gave to the particular branch of the business allotted to them. Its earnings did not depend upon the activities and efforts of a large number of subordinates.

In the instant case the success of the business was wholly due to the individual efforts of each stockholder-employee and the diligence each displayed and the attention each gave to the particular job allotted to him.

The fact that the time of payment of such amounts was left to the discretion of the board of trustees does not affect the deductibility thereof. *Odell Hardware Co.*, 8 B. T. A. 485; *Perkins Land & Lumber Co.*, 9 B. T. A. 528. In the latter case we said:

After a careful consideration of all the evidence we are of opinion that the salaries were reasonable and they were ordinary and necessary expenses of the business. We are unable to agree with the contention of respondent that the provision for deferment of the payment in cash of the liabilities of petitioner for these salaries until such time as the petitioner was possessed of sufficient cash to retire all its current liabilities operated to relieve petitioner of the liabilities. Petitioner was on the accrual basis and in our opinion, whether it quickly discharged in cash its liabilities for salaries is immaterial. We therefore conclude that the salaries of the three officers accrued upon the books and claimed as deductions from income should be allowed.

Certified copies of two opinions of the Supreme Court of Washington in the cases of *Matie E. Nichols* v. *Olympia Veneer Co., Inc., a corporation*, and *Matie E. Nichols* v. *Olympia Veneer Co., Inc.*, and a copy of the judgment rendered in one of these cases were introduced into evidence. The Court held that all of the additional compensation for 1923 constituted dividends and that of the $8 paid in 1925, $2 constituted dividends. It is not contended by either party that the decisions of the Court are *res adjudicata* of the question before the Board, which is, "Were the additional compensation voted by the trustees to the stockholder-employees for the years 1922, 1923, 1924, and all of the wages paid in 1925, reasonable compensation for the services performed?" In *Charles L. Suhr*, 4 B. T. A. 1198, we said:

Stating the rule generally, it is that in order to render a matter *res adjudicata* there must be identity of the thing sued for, identity of the cause of action, and identity of the parties in the character in which they are litigants. *Washington, etc., Steam-Packet Co.* v. *Sickles*, 24 How. 333. 341, 342; *Lyon* v. *Perin & Gaff Mfg. Co.*, 125 U. S. 698, 700. * * *

On this question see also *Guaranty State Bank*, 12 B. T. A. 543; *Edgar M. Carnrick*, 21 B. T. A. 12; and *Susan Young Eagan* v. *Commissioner*, 43 Fed. (2d) 88. Neither the parties nor the causes of action in the courts of Washington are identical with the parties and causes of action in this case.

We do not think it out of place to state that it appears to us, from a reading of the decisions of the Supreme Court of Washington, that the evidence introduced in those cases must have been materially different from that introduced at the hearing before the Board.

The only remaining assignment of error is the disallowance by the Commissioner of $1,966.46, designated " Reserve for Discounts and Commissions." The revenue agent testified that he disallowed this reserve because it was contingent. The evidence is indefinite and too meager to establish any error on the part of the Commissioner.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*